**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

IN RE:                                                          CASE NO. 25-31257

      DIOCESE OF ALEXANDRIA

          **DEBTOR[1]**                                               **CHAPTER 11**

---

**DEBTOR'S _EXPEDITED_ MOTION FOR AN ORDER AUTHORIZING AND**
**APPROVING SPECIAL NOTICING AND CONFIDENTIALITY PROCEDURES**

> **THE DEBTOR HAS REQUESTED AN EXPEDITED SPECIAL SETTING FOR THE HEARING OF THIS MATTER ON NOVEMBER 5, 2025, AT 10:00 A.M. (PREVAILING CENTRAL TIME) (A) IN PERSON AT TOM STAGG UNITED STATES COURTHOUSE, COURTROOM 4, 300 FANNIN STREET, SHREVEPORT, LOUISIANA 71101, OR (B) VIRTUALLY USING ZOOM ID 160 6557 9520 AND PASSCODE 6480377. FOR A DIRECT LINK AND OTHER INSTRUCTIONS REGARDING VIRTUAL ATTENDANCE, SEE THE "NOTICE OF CONDUCTING HEARINGS BY ZOOM" ISSUED BY JUDGE HODGE AND AVAILABLE ON THE COURT'S WEBSITE AT https://www.lawb.uscourts.gov/.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR BELIEVE THAT EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU MUST MAKE YOUR OBJECTION AT THE HEARING, OR FILE A WRITTEN OBJECTION BEFORE THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

    The **Diocese of Alexandria** (the "Debtor" or "Diocese"), as debtor-in-possession, through the undersigned counsel files this motion (the "Confidentiality Protocol Motion" or "Motion") pursuant to section 107 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 2002, 1007, 9018, and 9037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules of Bankruptcy Procedure 9037-1, 9071-1, and 9072-1 in the United States Bankruptcy Court for the Western District of Louisiana

---

[1] The Debtor's address is 4400 Coliseum Blvd, Alexandria, LA 71303. The last four digits of the Debtor's taxpayer identification number are 1102.

1

("LBR"). The Debtor seeks entry of an interim order substantially in the form attached hereto as Exhibit A (the "Interim Order") and, subsequently, entry of a final order substantially in the form attached hereto as Exhibit B (the "Final Order"). In support of this Motion, the Debtor relies on the *Declaration of Deacon Richard Mitchell Regarding the Debtor's History, Charitable Mission, and Purpose in Seeking Chapter 11 Relief* (the "Mitchell Declaration") and the *Declaration of David Brook in Support of First Day Motions* (the "Brook Declaration," together with the Mitchell Declaration, the "First Day Declarations"), which are incorporated by reference, and shows as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief requested herein are section 107 of the Bankruptcy Code, Bankruptcy Rules 2002, 1007, 9018, and 9037, and LBR 9037-1, 9071-1, and 9072-1.

## BACKGROUND

4.    On **October 31, 2025** (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no committees have been appointed or designated in this Chapter 11 case.

5.    With the filing of the petition, Debtor filed the First Day Declarations. Please refer to the First Day Declarations for a summary of the Debtor in the above-referenced Chapter

2

11 Case, including an overview of the Debtor's history, mission, ministries, financial position, the circumstances giving rise to the commencement of the Chapter 11 Case, and an overview of the relief requested in the first day pleadings.

6.     The Debtor's Chapter 11 Case was filed to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly and equitably resolve Allowed Claims held by Putative Abuse Survivors (defined below) and other creditors, in a manner consistent with and in accordance with the Bankruptcy Code.

7.     Many of the unsecured creditors in this case are individuals who allege that the Diocese or persons affiliated with the Diocese are liable for his or her injuries arising from abuse (the "Putative Abuse Survivors"). The Debtor recognizes the critical importance of protecting the privacy and anonymity of these individuals and of those accused of abuse (the "Accused Individuals").[2] These protections should not be diminished by the bankruptcy process.  The Debtor may also be required to list current and former employees, workers' compensation claimants, and minors in certain bankruptcy filings, which may contain sensitive personal information. The Debtor seeks to protect the identities of these individuals by safeguarding not only personally identifiable information, but also any information that could reasonably be used to identify either a Putative Abuse Survivor, an Accused Individual, current and former employees, workers' compensation claimants, or minors (the "Protected Information").[3]

---

[2] Accused Individuals whose identities will be subject to the Confidentiality Protocols do **_not_** include those listed in the Names of Clergy accused, which may be accessed at https://www.diocesealex.org/diocese-releases-names-of-clergy/, and which may be supplemented from time to time.

[3] As used herein, the term "personally identifiable information," shall have the same meaning ascribed to it in 11 U.S.C. § 101(41A). For the avoidance of doubt, however, "Protected Information" is not limited to personally identifiable information; it includes any information sufficient to identify a Putative Abuse Survivor, an Accused Individual, current or former employees, workers' compensation claimants, or minors.

**RELIEF REQUESTED**

8.      By this Motion, the Debtor requests that the Court enter an order (a) requiring all schedules, statements of financial affairs, creditor matrix, proofs of claim, motions, pleadings, and any other entry into the record containing Protected Information be permanently sealed; (b) requiring all documents filed in this Chapter 11 Case containing the Protected Information of employees, workers' compensation claimants, and minors be permanently sealed; provided, however, that the names of non-minor employees and workers' compensation claimants may be disclosed; (c) approving the Confidentiality Protocols (as defined below) applicable to (i) all proof of claim forms submitted by Putative Abuse Survivors, and (ii) all documents and records containing Protected Information; (d) limiting notice to a specific list of recipients on all but certain discrete matters identified herein; and (e) requiring that all documents and records containing Protected Information, including but not limited to those described in subsection (a), remain sealed after the final disposition of this case, and that all proofs of claim be destroyed three (3) years after the final distribution from the liquidating trust to be implemented through Debtor's proposed Chapter 11 plan of reorganization, or with such other reasonable period as the Court may determine.

**BASIS FOR RELIEF**

**A.      Sealing of Protected Information Under Section 107.**

**i.      Sealing of Abuse Survivor Protected Information Under Section 107(b).**

9.      Section 107(a) of the Bankruptcy Code aligns with the public's common law right to access court records. *See* 11 U.S.C. § 107(a); *Nixon v. Warner Communications*, 435 U.S. 589, 597-98 (1978) (recognizing a general right to inspect and copy public records, including judicial documents). However, § 107(b) creates an express exception, requiring bankruptcy courts to

4

protect parties from the disclosure of "scandalous or defamatory matter" without the need to balance public and private interests. *See Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 429 (9th Cir. 2011). Specifically, § 107(b)(2) mandates that, "[o]n request of a party in interest, the bankruptcy court ***shall*** … protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." (emphasis added).

10.     The Court has a mandatory duty to protect "scandalous or defamatory" material. *See Mesabi Metallics Co. LLC v. Cleveland-Cliffs, Inc. (In re ESML Holdings Inc.)*, 135 F.4th 80, 95-97 (3d Cir. 2025). This obligation is carried out through Rule 9018, which authorizes the Court to "make any order which justice requires…to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code…." Fed. R. Bankr. P. 9018. The Court may also "order that a filing be made under seal without redaction." Fed. R. Bankr. P. 9037(c); *see also* LBR 9037-1(a). LBR 9071-1(a) further permits a party to "file under seal any document that a statute or rule requires or permits to be so filed," such as under § 107(b).

11.     Courts interpreting the scope of "scandalous or defamatory" under § 107(b)(2) have reached differing conclusions. The Fifth Circuit has not yet addressed this language in the bankruptcy context, but other circuits have provided guidance. *See, e.g., In re Roman Catholic Archbishop*, 661 F.3d 417; *In re Gitto Global Corp.*, 422 F.3d 1, 11-12 (1st Cir. 2005); *In re Neal*, 461 F.3d 1048, 1054 (8th Cir. 2006). Notably, the Ninth Circuit is the only appellate court to address the meaning of "scandalous" in the context of clergy sexual abuse, adopting its plain meaning definition: "disgraceful, offensive, shameful and the like." 661 F.3d at 432-33.

12.     Although not in a bankruptcy context, the Fifth Circuit has defined "defamatory" as "words which tend to harm the reputation of another so as to lower the person in the

estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." *Ioppolo v. Rumana*, 581 Fed. Appx. 321, 328 (5th Cir. 2014) (citation omitted). In *Ioppolo*, the Fifth Circuit looked to Louisiana law, which deems words that "accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation" defamatory *per se*. *Id*. (citing *Costello v. Hardy*, 864 So. 2d 129, 140 (La. 2004)).

13.     Here, the information is both "scandalous" and "defamatory." Sexual abuse of a child is universally regarded as "disgraceful, offensive, shameful and the like," as recognized by the Ninth Circuit, which held that information pertaining to child sexual abuse is inherently "scandalous," and must be protected. 661 F.3d at 433; *see also In re Roman Catholic Diocese of Ogdensburg*, 2024 Bankr. LEXIS 1770, at *7 (Bankr. N.D. N.Y. July 30, 2024). Permanently sealing all documents containing the Protected Information of both Putative Abuse Survivors and Accused Individuals filed in this Chapter 11 Case is therefore necessary—and required—to protect from the disclosure of inherently "scandalous" and deeply personal matters in public court filings.

14.     In addition, allegations of child sexual abuse by the Accused Individuals are defamatory *per se*. In Louisiana, sexual abuse of a child is a crime. *See* La. Stat. Ann. §§ 14:43.1, 14:81.2. Unproven criminal accusations constitute defamatory words *per se* under the Fifth Circuit's interpretation in *Ioppolo*. 581 Fed. Appx. At 328. Disclosing the Accused Individuals' identities would unjustly harm their reputations and subject them to public contempt, absent a finding of liability. Accordingly, such Protected Information must also be sealed under section 107(b)(2) of the Bankruptcy Code.

6

15.     The Debtor requests entry of an order requiring documents containing Protected Information be filed permanently under seal. These measures are required to protect the privacy of these individuals in light of the particularly public nature of this Chapter 11 Case.

### ii.  Sealing of Information Related to Employees, Minors, and Workers' Compensation Claimants Under Section 107(c)(1).

16.     Section 107(c)(1) of the Bankruptcy Code provides that the court "for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury . . . [a]ny means of identification . . . contained in a paper filed, or to be filed, in a case under" the Bankruptcy Code. *See* 11 U.S.C. § 107(c)(1).

17.     This section grants bankruptcy courts wide discretion to protect personal information in court filings. *See, e.g., In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 758 (D. Del. 2018), *aff'd sub nom.*, *In re A C & S Inc.*, 775 F. App'x 78 (3d Cir. 2019). The analysis under § 107(c)(1) essentially mirrors the common law, requiring courts to balance public and private interests. *Id*. at 755-57.

18.     In this case, the Debtor may also be required to list current and former employees, workers' compensation claimants[4] and minors in the creditor matrix and other filings.  Public disclosure of the Protected Information (other than the names of adult employees and workers' compensation claimants) concerning these individuals could expose them to identity theft, harassment, or other harm—risks that are heightened by the anticipated media attention in this case. Moreover, there is no compelling public interest in disclosing this Protected Information

---

[4] Notably, the Health Insurance Portability and Accountability Act of 1996 (HIPAA) prohibits disclosure of certain personally identifying information of workers' compensation claimants. Such information must be redacted or sealed from public view.

7

(other than the names of adult employees and workers' compensation claimants), especially with respect to minors.

19.     Accordingly, the Debtor requests that the Court grant relief pursuant to § 107(c)(1) and authorize the Debtor to permanently seal any documents filed in this Chapter 11 Case containing the Protected Information (other than the names of adult employees and workers' compensation claimants) of employees, workers' compensation claimants, and minors, to protect them from identity theft, harassment, or other unlawful injury.

### iii.   Permanent Sealing is Required.

20.     The Debtor requests that all sealed documents and records remain under seal following the final disposition of this case, in accordance with LBR 9072-1, which provides:

> Unless the Presiding Judge otherwise directs, all sealed documents maintained on paper will be deemed unsealed sixty (60) days after final disposition of a case or proceeding. A party that desires that such a document remain sealed must move for this relief before the expiration of the sixty (60) day period. The Bankruptcy Clerk may store, transfer, or otherwise dispose of unsealed documents according to the procedure that governs publicly available court records.

21.     Because the Protected Information related to abuse claims contained in these sealed documents and records will continue to be considered "scandalous or defamatory," permanent sealing is necessary to prevent the disclosure of highly sensitive information and to protect the individuals to whom it pertains.

22.     The Protected Information also relates to current and former employees, workers' compensation claimants and minors, whose risk of identity theft, harassment, or other harm would not diminish simply because this case has concluded. The anticipated public scrutiny and potential negativity directed at the Debtor and individuals affiliated with the Debtor as a result of this bankruptcy proceeding, which may continue long after this case ends, highlight the need to

8

keep the Protected Information sealed, to safeguard these individuals from undue exposure and harm. Furthermore, there is no compelling public interest in disclosing this Protected Information after the disposition of this case.

23.     Furthermore, the Debtor requests that all proofs of claim be destroyed no later than three (3) years after the final distribution from the liquidating trust to be implemented through Debtor's proposed Chapter 11 plan of reorganization, or within such other reasonable period as the Court may determine. If a proof of claim relates to or identifies a living person, a copy of the proof of claim will be retained by the Debtor in accordance with Dallas Charter (as defined and described in the Mitchell Declaration), to the extent that the applicable claimant wishes to later publicly disclose the contents of the proof of claim detailing the alleged abuse. The Debtor further requests that, within twenty-eight (28) calendar days following the dissolution of any Committee formed pursuant to the Bankruptcy Code or any other entity formed to represents any group of abuse survivors (hereinafter a "Committee"), the Committee shall turn over all records in its possession to the trustee of the liquidating trust established pursuant to the Debtor's plan of reorganization.

**B.      Standing Order for Sealing the Protected Information.**

24.     The Debtor requests entry of a standing order, effective for the duration of this Chapter 11 Case, requiring that all documents and records containing Protected Information be permanently filed under seal by the Debtor and all other parties-in-interest, without the need for further order of the Court and in accordance with the Confidentiality Protocols (defined below). This relief will streamline the process for protecting Protected Information, eliminating the need for parties-in-interest to file individual motions to seal each time such information must be

submitted. As a result, this approach will reduce delays and minimize costs associated with this Chapter 11 Case.

25.     The relief requested herein is consistent with similar relief provided in other diocesan bankruptcy cases across the country. *See, e.g., In re Diocese of San Diego*, Case No. 24-02202 (Bankr. S.D. Cal. July 8, 2024) [Dkt. No. 90]; *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326 (Bankr. E.D. Cal. May 4, 2024) [Dkt. No. 268]; *In re The Roman Catholic Archbishop of San Francisco*, Case No. 23-30564 (Bankr. N.D. Cal. Oct. 20, 2023) [Dkt. No. 227]; *In re The Roman Catholic Bishop of Oakland*, Case No. 23-40523 (Bankr. N.D. Cal. July 25, 2023) [Dkt. No. 292]; *In re The Roman Catholic Bishop of Santa Rosa*, Case No. 23-10113 (Bankr. N.D. Cal. May 3, 2023) [Dkt. No. 172]; *In re The Norwich Roman Catholic Diocesan Corp.*, Case No. 21-20687 (Bankr. D. Ct. Sept. 16, 2021) [Dkt. No. 265]; *In re The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345 (Bankr. S.D. N.Y. Nov. 4, 2020) [Dkt. No. 125]; *In re The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D. La. June 22, 2020) [Dkt. No. 177].

26.     The documents subject to sealing include, but are not limited to, the creditor matrix, the Debtor's schedules of assets and liabilities, claims filed by Putative Abuse Survivors, and any pleadings or other documents, including affidavits of service, filed in this Chapter 11 Case containing the Protected Information.

## C.     Confidentiality Protocols.

### i.     Confidentiality Protocol for Submission and Handling of Putative Abuse Survivor Claims.

27.     Because of the particular nature of the proof of claim forms to be submitted by the Putative Abuse Survivors, the Debtor requests that the Court approve a specific confidentiality protocol for submission and handling of such claims (the "Confidentiality Protocol for Claims"),

which will apply to all proofs of claim submitted by Putative Abuse Survivors (the "Putative Abuse Survivor Claims"):

    a.  all claimants asserting a Putative Abuse Survivor Claim are directed to submit such claims directly to the Debtor's claims and noticing agent, Stretto, Inc. (the "Claims Agent"). Such claims should not be filed with the Court;

    b.  Putative Abuse Survivor Claims received by the Claims Agent shall be held and treated as confidential by the Claims Agent, and copies thereof shall be provided or made available only to the following parties (the "Authorized Claim Recipients"):

        i.  with respect to any particular Putative Abuse Survivor Claim, the holder of such claim and their counsel of record;

        ii.  the member trustees and officers of the Debtor, and such other employees of the Debtor who are necessary to assist the Debtor in reviewing and analyzing the Putative Abuse Survivor Claims;

        iii.  any counsel to the Debtor or the Committee retained pursuant to an order of the Bankruptcy Court;

        iv.  any insurance company that provided insurance that may cover the claims described in any Putative Abuse Survivor Claim, together with their respective successors, reinsurers, administrators, and counsel;

        v.  any person appointed pursuant to an order of the Court to serve as a mediator, as a representative for unknown or future claimants, or as a special arbitrator/claims reviewer appointed to review and resolve Putative Abuse Survivor Claims;

        vi.  any trustee or functional equivalent thereof, appointed to administer payments to Putative Abuse Survivor and professionals retained by such trustee or functional equivalent thereof, including pursuant to a plan of reorganization or a proposed plan of reorganization; provided, however, that any members of advisory, steering, consultative, or similar committees appointed to assist the trustee shall not be Authorized Claim Recipients;

        vii.  authorized representatives of a department of corrections, if a Putative Abuse Survivor is incarcerated, but only with respect to any proof of claim form by such claimant and only to the extent disclosure is required under applicable non-bankruptcy law;

        viii.  upon consent of the Debtor and the Committee, and upon ten (10) business days' notice to the Putative Abuse Survivor and his or her counsel of record, any person identified in a Putative Abuse Survivor Claim who is

alleged to have witnessed, committed, or otherwise had knowledge of, any act of abuse against the claimant;

ix. any person who is alleged by the Putative Abuse Survivor to be responsible, financially or otherwise, whether in the Putative Abuse Survivor Claim or in any complaint or other filings in any lawsuit, for the consequences of any such act of abuse, and any such person's counsel of record;

x. any person with the express written consent of the Debtor and the Committee, upon ten (10) business days' notice to the affected claimants and their counsel of record; and

xi. such other persons as the Court may, pursuant to subsequent order, authorize to access to the proof of claim forms; provided, however, that any such determination shall be made on no less than ten (10) business days' notice to the affected claimant(s) and their counsel of record.

c. notwithstanding the designation of Authorized Claim Recipients above, no person or entity may obtain copies of any Putative Abuse Survivor Claims prior to the execution of a confidentiality agreement substantially in the form attached to this Motion as Exhibit D (the "Authorized Party Confidentiality Agreement"). Counsel to the Debtor, its insurers, and the Committee shall only be required to execute a single Authorized Party Confidentiality Agreement on behalf of those entities and their respective clients, which shall be deemed binding on their entire firm and, with respect to the Debtors and its insurers, their respective clients. Access to the Putative Abuse Survivor Claims for all other Authorized Claim Recipients shall be restricted to the natural person who executes an Authorized Party Confidentiality Agreement and a separate Authorized Party Confidentiality Agreement must be signed by each natural person seeking access to the Putative Abuse Survivor Claims on behalf of an Authorized Claim Recipient;

d. Authorized Claim Recipients in possession of any Putative Abuse Survivor Claims shall keep the proof of claim forms confidential and shall not use or disclose any information provided in any Putative Abuse Survivor Claims except in accordance with the terms of the Authorized Party Confidentiality Agreement or pursuant to an order of this Court;

e. the Claims Agent shall assign to each claimant asserting a Putative Abuse Survivor Claim a unique identifier code and shall maintain a confidential list of the identities of the Putative Abuse Survivors, their corresponding identifier code, and their respective proof of claim form; and

f. in addition, information in Putative Abuse Survivor Claims may be required to be disclosed to governmental authorities under mandatory reporting laws in many jurisdictions. The Debtor and Committee also reserve the right to

disclose such information to governmental authorities if they reasonably believe that fraud is being committed. If any such disclosures to governmental authorities are required to be made under this paragraph (f), Putative Abuse Survivors will be notified at the time of such disclosure.[5]

28.     The Debtor respectfully submits that the proposed Confidentiality Protocol for Claims is both necessary and appropriate under the circumstances of this Chapter 11 Case. The Debtor is sensitive to the privacy and other concerns which might otherwise impede a Putative Abuse Survivor's willingness to assert a claim against the Debtor's estate and believes that the Confidentiality Protocol for Claims appropriately addresses those issues. Through the Confidentiality Protocol for Claims and the specialized form for Putative Abuse Survivor Claims, the Debtor is attempting to obtain the information that it needs to evaluate the Putative Abuse Survivor Claims, while at the same time providing a claim submission process that will not discourage Putative Abuse Survivors from coming forward and asserting their claims.

**ii.  Confidentiality Protocol for Submission of Sealed Documents Other than Putative Abuse Survivor Claims.**

29.     To further ensure the confidentiality of Protected Information, the Debtor requests that the Court approve specific confidentiality protocol for the submission of documents containing Protected Information, excluding the Putative Abuse Survivor Claims (the "Confidentiality Protocol for Documents," together with the Confidentiality Protocol for Claims, the "Confidentiality Protocols"):

> a. the Debtor will file redacted copies of the creditor matrix, schedules, and statement of financial affairs on the docket of this Chapter 11 Case. These documents will either have all Protected Information formally redacted or replace such information with a pseudonym for the Putative Abuse Survivor

---

[5] For the avoidance of doubt, the Bankruptcy Code expressly prohibits "[t]he United States trustee, bankruptcy administrator, trustee, and any auditor serving under section 586(f) of title 28" from "disclos[ing] information specifically protected by the court under [title 11 of the United States Code.]" *See* 11 U.S.C. § 107(c)(3). To the extent any of these aforementioned parties receive copies of the Putative Abuse Survivor Claims, they are bound upon entry of the proposed Confidentiality Order approving the Confidentiality Protocol and prohibited from sharing these forms or disclosing the information therein, absent receiving authorization to do so from this Court.

13

or Accused Individual. The Debtor will promptly provide unredacted copies of such documents under seal to Court in accordance with subsection (b);

b.  except for the documents mentioned in (a), all other documents containing Protected Information will be filed under seal by emailing them directly to Tommie_Slatten@lawb.uscourts.gov and Melanie_Welch@lawb.uscourts.gov, with the subject line: "Filing Under Seal, Case No. 25-31257, [Name of Filing]";

c.  except for Putative Abuse Survivor Claims, after the filing of any sealed document, the filing party will promptly serve an unsealed version of the document on the Bankruptcy Court, the Office of the U.S. Trustee for Region 5, any party, including a Putative Abuse Survivor or Accused Individual, specifically identified in the document, in addition to the Authorized Claim Recipients (the "Authorized Document Recipients," together with the Authorized Claim Recipients, the "Authorized Parties"), subject to the Authorized Document Recipient executing the Authorized Party Confidentiality Agreement. Counsel to the Debtor and the Committee shall only be required to execute a single Authorized Party Confidentiality Agreement on behalf of those entities and their respective clients, which shall be deemed binding on their entire firm and, with respect to the Debtor, its respective client. Access to unsealed versions of the sealed documents for all other Authorized Document Recipients shall be restricted to the natural person who executes the Authorized Party Confidentiality Agreement;

d.  Authorized Document Recipients in possession of unsealed documents containing Protected Information shall keep such documents confidential and shall not use or disclose any Protected Information therein except in accordance with the terms of the Authorized Party Confidentiality Agreement or pursuant to an order of this Court;

e.  Authorized Document Recipients have ten (10) business days upon receipt of the sealed document to file an objection with the Court against the redacted version being filed publicly. Objections must be redacted of any Protected Information; and

f.  if no objection is filed, or if the Court orders public filing, the filing party has five (5) business days to file a redacted version on the public docket. The filing party must either redact all Protected Information, replace it with the claim number associated with the Putative Abuse Survivor maintained by the Claims Agent or use pseudonyms.

30.  The Debtor submits that the proposed Confidentiality Protocol for Documents will streamline procedures for maintaining confidentiality while allowing the case to proceed

efficiently. Overall, the Confidentiality Protocols are essential and appropriate to safeguard Protected Information throughout the proceeding.

**D.      Unsealing.**

31.      If a party seeks to unseal a document, or if there is a question as to whether a document contains Protected Information, the Debtor requests that such party be required to file the document under seal in accordance with section C(ii) herein and then seek a determination from this Court regarding whether the document may be unsealed or redacted. The Debtor believes that this procedure will promote efficiency, minimize confusion, and prevent the inadvertent disclosure of Protected Information.[6]

**E.      The Proposed Limited Notice Procedures Will Reduce Administrative Expenses and Provide Adequate Due Process.**

32.      Bankruptcy Rule 2002(m) provides that the court may, from time to time, enter orders designating the manner in which notices may be sent, and the entities to whom notice may be sent. Bankruptcy Rule 2002(i) provides that:

> … the Court may order that notices required under subdivision (a)(2), (3) and (6) of this rule to be transmitted to the United States trustee and be mailed only to the committees elected under § 705 or appointed under § 1102 of the Code or to their authorized agents and to the creditors and equity security holders who served on the trustee or debtor in possession and file a request that all noticed be mailed to them. A committee appointed under § 1114 shall receive copies of all notices required by subdivisions (a)(1), (a)(5), (b), (f)(2) and (f)(7), and such other notices as the court may direct.

Fed. R. Bankr. P. 2002(i). Courts in other diocese bankruptcies have recognized the importance of limited notice in chapter 11 cases and have granted similar motions to limit notice. *See e.g., In*

---

[6] This relief is not intended to circumvent or diminish the rights and protections afforded under the Dallas Charter (as defined and described in the Mitchell Declaration). Rather, it seeks to establish a uniform procedure for handling all documents that contain, or may contain, Protected Information, to streamline the process and promote efficiency, thereby allowing this Chapter 11 Case to proceed expeditiously for the benefit of all parties in interest. Putative Abuse Survivors retain the right to publicly disclose their allegations of abuse but must first seek a determination from the Court and make appropriate redactions to protect any other individual(s) whose Protected Information may be implicated.

*re Roman Catholic Bishop of Oakland*, 23-40523 (Bankr. N.D. Cal. July 25, 2023) [Dkt. No. 292]; *In re The Roman Catholic Church of the Archdiocese of New Orleans*, 20-10846 (Bankr. E.D. La. 2020) [Dkt. No. 22].

33.     The Debtor estimates numerous creditors and parties-in-interest may be technically entitled to notice in this case. To require the Debtor to provide notice of all pleadings and other papers filed in this case to all parties-in-interest, no matter how limited their interest may be in a particular matter, would be burdensome and costly to the estate in light of the photocopying, postage, and other expenses associated with large mailings.

34.     The Debtor proposes to create a service list comprised of the core parties-in-interest in the Bankruptcy Case (the "Core Service List") who would be entitled to receive service of all filings. Those parties-in-interest should include: (i) the Office of the United States for Trustee for Region 5; (ii) the Debtor; (iii) the attorneys for the Debtor; (iv) the attorneys' for the Committee once that committee has been appointed, and until then, (a) the Putative Abuse Survivors listed on the unredacted Schedule F through their counsel and (b) the Debtor's twenty (20) largest unsecured trade creditors; (v) those persons who have formally appeared by filing a Notice of Appearance, a Request for Notice, or a similar document and requested notice in this case under Bankruptcy Rule 2002; (vi) the Louisiana Attorney General's Office; and (vii) known counsel to the foregoing.

35.     In furtherance of the Debtor's request and consistent with the relief requested in this Motion, the Debtor has prepared a proposed initial Core Service List, a copy of which is attached hereto as Exhibit C and incorporated herein by reference.

36.     The matters with respect to which notice would be limited to the Core Service List would include all matters covered by Bankruptcy Rule 2002, with the express exception of

16

the following: (i) notice of the first meeting of creditors under section 341 of the Bankruptcy Code; (ii) the time fixed for filing proofs of claim under Bankruptcy Rule 3003(c); (iii) the time fixed for filing objections to, and the hearing to consider approval of, a disclosure statement or confirmation of a plan of reorganization; (iv) notice and transmittal of ballots for accepting or rejecting a plan of reorganization; (v) notice of the time fixed to accept or reject a proposed modification of a chapter 11 plan; and (vi) notice of any hearing on a motion to dismiss the Bankruptcy Case or to convert the Bankruptcy Case to chapter 7. In addition to Rule 2002 matters, the Core Service List also would be used for matters that may be required by the LBR to be served upon all parties-in-interest.

37.     The Debtor or the Claims Agent will serve a copy of the order approving this Motion on all parties-in-interest within three days of the entry of the order. The proposed order includes instructions on how a party-in-interest can be included on the Core Service List.

38.     The Debtor or the Claims Agent will update the Core Service List to include those persons or parties who have made a written request to be included on the Core Service List: (i) every seven (7) days during the first thirty (30) calendar days of this case; and (ii) monthly thereafter throughout the pendency of this case to include the name and address of any party-in-interest that has made a written request for notice since the Core Service List was last updated. Such updated Core Service List will be filed with the Court and circulated to all parties appearing on the Core Service List only in the event that there is a change to the Core Service List.

39.     Upon completion of noticing any particular matter, the serving party or its agent will submit to the Court an affidavit or certificate of service and an attached list of parties receiving notice within three (3) business days of service. The affidavit or certificate of service

may state that all parties on the Core Service List were served in lieu of individually identifying each party on the Core Service List.

40.     The Debtor requests that the order approving these notice procedures be a standing order that will remain in force for the duration of the Bankruptcy Case and that shall be followed by all parties-in-interest. The Debtor further requests that it and any other party-in-interest be permitted to limit service to the parties on the Core Service List, other than for the matters described in paragraph 36, without further order of the Bankruptcy Court.

**F.    Basis for Relief Under Bankruptcy Rule 6003.**

41.     Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, the Court may issue an order within the first 21 days of a chapter 11 case granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition." Fed. R. Bankr. P. 6003.

42.     As described herein and in the First Day Declarations, the Debtor is required to keep confidential the Protected Information. Because the Debtor is obligated to file certain disclosures like a creditor matrix, a list of its top 20 unsecured creditors, and its schedules and statements of financial affairs within the first days and weeks of this case, the ability to seal the Protected Information is needed immediately. The Debtor also needs to file additional motions and applications in the coming days, and will need to send all such filings to all parties if the relief requested herein is not granted. Accordingly, the Debtor respectfully submits that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

18

## **RESERVATION OF RIGHTS**

43.     Nothing contained in this Motion is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any appropriate party in interest's right to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

44.     Nothing contained in this Motion is intended to be or shall be construed as a waiver of any of the Debtor's rights under any applicable law, including, without limitation, the Code of Canon law, the First Amendment of the United States Constitution, the Constitution of the State of Louisiana, Louisiana Business Corporation Act, the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb-2000bb-4), the church autonomy doctrine, charitable trust law, Louisiana trust law, and the Debtor's rights under any insurance policies and to proceeds thereof, and to object to disclosure of information and contend that certain assets discussed in this Motion are not property of the estate.

## **NOTICE**

45.     The Debtor will provide notice of this Confidentiality Protocol Motion to: (i) the Office of the United States for Trustee for Region 5; (ii) the attorneys for the Committee once the committee has been appointed, and until then, (a) the Putative Abuse Survivors listed on the unredacted Schedule F through their counsel and (b) the Debtor's twenty (20) largest unsecured trade creditors; (iii) those persons who have formally appeared by filing a Notice of Appearance, a Request for Notice, or a similar document and requested notice in this case under Bankruptcy Rule 2002; (iv) the Louisiana Attorney General's Office; (v) the Debtor's banks and financial institutions as identified on the Debtor's Schedules; (vi) the Ad Hoc Group through its counsel, R. Joseph Naus and Patrick McCune; and (vii) known counsel to the foregoing. A copy of this

Motion and any orders approving it will also be made available on the Debtor's Case Information Website located at https://cases.stretto.com/dioceseofalexandria. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests entry of an order granting the relief requested in this Motion and such other and further relief as the Court may deem just and appropriate.

Alexandria, Louisiana, this 31st day of October, 2025.

Respectfully submitted:

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By: */s/ Bradley L. Drell*
Bradley L. Drell, Esq. (La. Bar #24387)
Heather M. Mathews, Esq. (La. Bar #29967)
2001 MacArthur Drive
P.O. Box 6118
Alexandria, LA 71307
Telephone (318) 445-6471
Facsimile  (318) 445-6476
Email:     bdrell@goldweems.com
               hmathews@goldweems.com

**HUSCH BLACKWELL LLP**
Mark T. Benedict, Esq. (*pro hac vice forthcoming*)
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone (816) 983-8000
Facsimile  (816) 983-8080
Email:     mark.benedict@huschblackwell.com

AND

Francis H. LoCoco, Esq. (*pro hac vice forthcoming*)
Bruce G. Arnold, Esq. (*pro hac vice forthcoming*)
Lindsey M. Greenawald, Esq. (*pro hac vice forthcoming*)
511 North Broadway, Suite 1100

Milwaukee, WI 53202
Telephone (414) 273-2100
Facsimile  (414) 223-5000
Email:     frank.lococo@huschblackwell.com
           bruce.arnold@huschblackwell.com
           lindsey.greenawald@huschblackwell.com

**ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION, DIOCESE OF ALEXANDRIA**