# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 25-31257 |
| DIOCESE OF ALEXANDRIA | |
| DEBTOR[1] | CHAPTER 11 |

### APPLICATION[2] OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY WIENER, WEISS & MADISON, A PROFESSIONAL CORPORATION, AS COUNSEL AND ITS REQUEST FOR RELATED RELIEF

> **THE COMMITTEE HAS REQUESTED A SPECIAL SETTING FOR THE HEARING OF THIS APPLICATION ON JANUARY 20, 2026, AT 10:00 A.M. (PREVAILING CENTRAL TIME) IN PERSON AT TOM STAGG UNITED STATES COURTHOUSE, COURTROOM 4, 300 FANNIN STREET, SHREVEPORT, LOUISIANA 71101.**
>
> **FOR A DIRECT LINK AND OTHER INSTRUCTIONS REGARDING VIRTUAL ATTENDANCE, SEE THE "NOTICE REGARDING REMOTE ACCESS TO PROCEEDINGS" ISSUED BY JUDGE HODGE AND AVAILABLE ON THE COURT'S WEBSITE AT https://www.lawb.uscourts.gov/.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST FILE AND SERVE YOUR OBJECTION NOT LATER THAN SEVEN (7) DAYS PRIOR TO THE HEARING DATE, OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] The Debtor's address is 4400 Coliseum Blvd, Alexandria, LA 71303. The last four digits of the Debtor's taxpayer identification number are 1102.

[2] Please note, the presiding Judge, Judge John S. Hodge, has previously issued a "Notice Regarding Remote Access to Proceedings for Cases Assigned to Judge Hodge," which provides instructions regarding remote access to proceedings before the Court, that Notice can be accessed at the following web address: https://www.lawb.uscourts.gov/sites/lawb/files/Notice%20Regarding%20Remote%20Access%20to%20Proceedings_.pdf . As more fully provided therein, judges may provide the public and media with audio-only access to hearings that do not involve witness testimony, in line with the Judicial Conference Broadcast Policy. Further, the Court may allow remote participation for parties and attorneys for good cause. Audio-only Access: Dial Zoom's conference phone number 1-(669)-254-5252 and enter meeting ID 160 6557 9520, press #, and press # again to skip the participant ID. If permitted, remote appearance via Zoom using Zoom ID 160 6557 9520 and Passcode 6480377.

1

The **Official Committee of Unsecured Creditors** (the "Committee") in the above-captioned case concerning the debtor-in-possession, the Diocese of Alexandria (the "Diocese" or "Debtor"), files this Application (the "Application") to employ Wiener, Weiss & Madison, A Professional Corporation ("WWM" or "Proposed Counsel") as counsel and for related relief pursuant to 11 U.S.C. §§ 328, 330, 503 and 1103 and Federal Rule of Bankruptcy Procedure 2014. In support of this Application, the Committee represents as follows, which is further supported by (i) the declaration of WWM shareholder R. Joseph Naus (the "Naus Declaration"), and (ii) the declaration of Committee chair Clint Allen (the "Allen Declaration"), attached hereto as **Exhibit "1"** and **Exhibit "2"**[3] respectively and incorporated herein by reference for all purposes:

## JURISDICTION

1. The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

2. On October 31, 2025 (the "Petition Date"), the Diocese filed a voluntary petition for relief under the Bankruptcy Code.

3. The Debtor remains in possession of its property and is managing its business as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, 11 U.S.C. §101 et seq.

4. On November 21, 2025, the Office of the United States Trustee for Region 5 (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a)(1) and 1102(b) of the Bankruptcy Code [Dkt. No. 94]. The five members appointed to the Committee are: Clint Allen (Acting Chairperson), Daniel Mejias, Rachael Moreno, Micheal Williams, and Thomas Defatta. All five Committee members are represented by attorneys—Adam Horowitz (for Clint Allen), Daniel

---

[3] The Allen Declaration will be filed at a later time, separately, as a supplemental, supporting document.

Meyer (for Daniel Mejias and Rachael Moreno), and N. Frank Elliott (for Micheal Williams and Thomas Defatta)—who were members of the Ad Hoc Group and signed the Pre-Negotiation Letter (defined below).

**Pre-Negotiation Agreement and WWM's Representation of Ad Hoc Group**

5. Prior to the Petition Date, the Debtor and an ad hoc group of attorneys representing abuse survivor claimants (the "Ad Hoc Group") entered into a Pre-Negotiation Letter Agreement dated April 17, 2025, ("Pre-Negotiation Letter") to facilitate settlement discussions and negotiations in regard to the anticipated bankruptcy filing by the Diocese of Alexandria. A copy of the executed Pre-Negotiation Letter is attached hereto as **Exhibit "3"** and incorporated herein by reference[4]. On October 23, 2025, an Amendment No. 1 to the Pre-Negotiation Letter Agreement ("Pre-Negotiation Letter Amendment") was signed by the Chairperson of the Ad Hoc Group, Counsel for the Ad Hoc Group, and Counsel for the Diocese of Alexandria, a copy of which is attached hereto as **Exhibit "4"**. Together the Pre-Negotiation Letter with the Pre-Negotiation Letter Amendment are collectively referred to herein as the "Pre-Negotiation Agreement".

6. Pursuant to the Pre-Negotiation Agreement, the Ad Hoc Group retained WWM to serve as counsel to the Ad Hoc Group in relation to the aforementioned settlement discussions and negotiations related to the anticipated bankruptcy filing by the Diocese of Alexandria. Under Section 4 of the Pre-Negotiation Agreement, the Debtor agreed to pay WWM's reasonable and documented legal fees and expenses incurred on behalf of the Ad Hoc Group during the negotiation period, including:

---

[4] In compliance with paragraph 10 of the Pre-Negotiation Letter, at least for purposes of this initial filing, the signature pages attached to the Pre-Negotiation Letter and the joinders thereto have been redacted except for the signature pages of Group Counsel, that is WWM, and the Diocese's signature page.

(a) A $50,000 retainer paid on the effective date of the Pre-Negotiation Agreement, of which up to $15,000 could be applied to work performed before the agreement was signed; and

(b) Up to $30,000 per month in legal fees for work performed during the term of the agreement.

7. The Pre-Negotiation Agreement provided that it would terminate upon the filing of a bankruptcy petition by the Debtor. *See* Pre-Negotiation Agreement § 9(c). The agreement further provided that "the Diocese will continue to be responsible for and pay the Legal Fees and the fees of the Advisor (if any) incurred on or before the effective date of the terminations described in those subsections." Pre-Negotiation Agreement § 9(d).

8. Pursuant to the Pre-Negotiation Agreement, WWM performed work as bankruptcy counsel to the Ad Hoc Group of attorneys in relation to their representation of abuse survivors prior to the Petition Date, including counsel regarding possible class treatment of abuse survivors and their claims in a possible bankruptcy which might be filed by the Diocese, a possible Restructuring Support Agreement related to that bankruptcy, and general bankruptcy matters related thereto, this included analyzing the Debtor's financial condition, reviewing draft pleadings and documents, participating in mediation sessions, and advising regarding the interests of abuse claimants generally. All fees and expenses incurred by WWM for work performed through no later than October 30, 2025, were paid pre-petition by the Debtor pursuant to the Pre-Negotiation Agreement, and WWM is not seeking compensation from the estate for any work performed prior to the Petition Date.

9. Upon the filing of the bankruptcy petition on October 31, 2025, the Pre-Negotiation Agreement terminated by its terms. *See* Pre-Negotiation Agreement § 9(c). After the Petition Date,

WWM continued to provide bankruptcy counsel to attorneys representing abuse claimants but no longer received compensation from the Debtor. WWM performed this post-petition work without any guaranty of payment for the same, but also with the understanding that if a creditors' committee was appointed and if WWM was retained by that committee, WWM could submit a request for compensation from the estate as an administrative expense for all work performed on and after the Petition Date.

10. Upon formation of the Committee on November 21, 2025, the five members appointed to the Committee—Clint Allen (Acting Chairperson), Daniel Mejias, Rachael Moreno, Micheal Williams, and Thomas Defatta—are represented by attorneys who were members of the Ad Hoc Group that retained WWM as bankruptcy counsel. Specifically, the Committee members are represented by Adam Horowitz of Horowitz Law (representing Clint Allen), Daniel Meyer of Slater Slater Schulman, LLP (representing Daniel Mejias and Rachael Moreno), and N. Frank Elliott of N. Frank Elliott, III, LLC (representing Micheal Williams and Thomas Defatta), all of whom signed the Pre-Negotiation Letter as members of the Ad Hoc Group and retained WWM to serve as bankruptcy counsel to the Ad Hoc Group.

11. On December 1, 2025, the Committee conducted its first meeting and at that meeting unanimously voted to formally retain WWM as counsel to the Committee. The Committee seeks approval of WWM's employment as of the Petition Date so that WWM may seek compensation as an administrative expense for all post-petition work performed.

## **RELIEF REQUESTED**

12. The Committee desires to retain WWM as its counsel in this case, after determining that WWM has the resources and experience necessary to represent it in the captioned bankruptcy case. The proposed form of Order is attached.

13. WWM has substantial experience in Chapter 11 reorganization cases and is one of the few firms in north Louisiana with an active Chapter 11 practice. Given the nature of this case and WWM's knowledge of the case and the parties, the Committee believes that retention of WWM as its counsel is appropriate and necessary.

14. By this Application, the Committee respectfully requests that this Court enter an Order authorizing the Committee to employ and retain WWM as its counsel pursuant to §§ 328(a), 330, and 331, and 1103(a) of the Bankruptcy Code.

## RETENTION AND SERVICES

15. WWM is expected to render legal services as the Committee may consider desirable to discharge the Committee's statutory and fiduciary responsibilities and further the interest of the Committee's constituents in this Chapter 11 Case. It is anticipated that WWM will perform the following services, which include but are not limited to:

(a) assisting, advising and representing the Committee in its consultations with the Debtor regarding the administration of this Case;

(b) assisting, advising and representing the Committee in analyzing the Debtor's assets and liabilities, investigating the extent and validity of liens or other interests in the Debtor's property and participating in and reviewing any proposed asset sales, any asset dispositions, financing arrangements and cash collateral stipulations or proceedings;

(c) reviewing and analyzing all applications, motions, orders, statements of operations and schedules filed with the Court by the Debtor or third parties, advising the Committee as to their propriety, and, after consultation with the Committee, taking appropriate action;

(d) preparing necessary applications, motions, answers, responses, objections, oppositions, orders, reports and other legal papers on behalf of the Committee;

(e) representing the Committee at hearings held before the Court and communicating with the Committee regarding the issues raised, as well as the decisions of the Court;

(f) performing all other legal services for the Committee which may be necessary and proper in this Case and any related proceeding(s);

(g) representing the Committee in connection with any litigation, disputes or other matters that may arise in connection with this Case or any related proceeding(s);

(h) assisting, advising and representing the Committee in any manner relevant to reviewing and determining the Debtor's rights and obligations under leases and other executory contracts;

(i) assisting, advising and representing the Committee in investigating the acts, conduct, assets, liabilities and financial condition of the Debtor, the Debtor's operations and the desirability of the continuance of any portion of those operations, and any other matters relevant to this Case;

(j) assisting, advising and representing the Committee in their participation in the negotiation, formulation and drafting of a plan of liquidation or reorganization or documents related thereto;

(k) assisting, advising and representing the Committee on the issues concerning the appointment of a trustee or examiner under section 1104 of the Bankruptcy Code;

(l) assisting, advising and representing the Committee in understanding its powers and its duties under Title 11 of the United States Code (the "Bankruptcy Code") and the

Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and in performing other services as are in the interests of those represented by the Committee;

(m) assisting, advising and representing the Committee in the evaluation of claims and on any litigation matters, including avoidance actions; and

(n) providing such other services to the Committee as may be necessary in this Case or any related proceeding(s).

It is necessary for the Committee to retain counsel to perform these services and to otherwise assist the Committee in fulfilling its statutory duties under the Bankruptcy Code.

## **DISINTERESTEDNESS AND NO ADVERSE INTEREST**

16. The Committee seeks to employ WWM as its counsel under 11 U.S.C. §§ 328(a) and 1103(a)-(b).

17. Pursuant to 11 U.S.C. § 1103(b), an attorney (and by extension law firm) employed to represent a committee appointed under section 11 U.S.C. § 1102 may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. Section 1103(b) states that "[r]epresentation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest."

18. "Adverse interest" is not defined in 11 U.S.C. § 1103 or in the definitional section of the Bankruptcy Code (see e.g., 11 U.S.C. § 101), nor is there a Fifth Circuit case that undersigned has been able to identify defining "adverse interest" in the context of § 1103(b).

19. While not included in the provisions directly authorizing employment of counsel for a committee, §§ 328(a) and 1103, 11 U.S.C. § 328(c) of the Bankruptcy Code states that a court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed either under §§ 327 or 1103 if, at any time during the professional's employment

8

under §§ 327 or 1103, such professional person is not a "disinterested person", or represents or holds an interest "adverse" to the interest of the estate with respect to the matter on which such professional person is employed.

20. "Distinterested person" is defined in 11 U.S.C. § 101(14) to mean a person that is: (a) not a creditor, an equity security holder, or an insider [of the debtor], (b) is not and was not, within two (2) years before the date of the filing of the petition, a director, officer, or employee of the debtor, and (c) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

21. In the context of §§ 327 and 1107 (authorizing employment by a debtor-in-possession or trustee of the estate as opposed to employment by an § 1102 committee of committee counsel under § 1103), the Fifth Circuit has found determinations as to whether there is an "adverse interest" must be made "with an eye toward the specific facts of each case." ***In re American Intern. Refinery, Inc.***, 676 F.3d 455, 461 (5thCir. 2012). Further, in this context, the Fifth Circuit has noted that a party may have an adverse interest if it possesses a predisposition under the circumstances that render a bias against the client (here the committee), or if a party possesses an economic interest that would create a dispute in which the potential client is a rival claimant. *Id.*

22. To aid in the Court's assessment of the foregoing, Bankruptcy Rule 2014(b) requires that any application to employ a professional under § 1103 include specific facts, including, to the best of the applicant's knowledge, all the professional's connections with the debtor, the creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, and any person employed in the United States Trustee's office. In satisfaction of this requirement,

the Committee has attached hereto the Naus Declaration, and hereby incorporates it into this application.

23. The Committee submits that based on the facts disclosed in the Naus Declaration, several of which are also restated herein, WWM is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, and does not have any disqualifying conflict of interest that would prevent it from representing the Committee; and that WWM does not hold an adverse interest or represent any entity having an adverse interest as referenced in 11 U.S.C. §§ 328(c) and 1103(b), which would prevent it from representing the Committee.

24. WWM seeks to represent the Committee, which is composed of creditors holding abuse claims against the Debtor. As committee counsel, WWM's representation naturally involves advocating for positions that may be adverse to the Debtor's positions on various matters in this case, including but not limited to plan terms, asset valuations, claims treatment, and potential litigation. This adversity is inherent in the role of committee counsel and does not disqualify WWM from employment.

25. As noted previously, section 1103(b) states that "[r]epresentation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest." Similarly, section 327(c) of the Bankruptcy Code (addressing employment by a debtor-in-possession or trustee of the estate as opposed to employment by an § 1102 committee of committee counsel under § 1103), provides that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." Here, WWM's representation of creditors—both pre-petition as counsel to the Ad Hoc

10

Group and post-petition for counsel for abuse survivors—does not create an actual conflict of interest that would disqualify WWM from serving as Committee counsel. This representation was not adverse to, but rather aligned with the interest of the Committee.

26. To the best of the Committee's and WWM's knowledge, information and belief and based upon the Naus Declaration: (a) WWM has no connections with the Debtor (other than as set forth herein or in the Naus Declaration), the United States Trustee for the Western District of Louisiana (the "U.S. Trustee"), any person employed in the office of the U.S. Trustee (other than connections that arise in the ordinary course of bankruptcy practice) or any other party with an actual or potential interest in the chapter 11 case or their respective attorneys or accountants that would create a disqualifying conflict; (b) WWM is not a creditor, equity security holder or insider of the Debtor; (c) none of WWM's shareholders or associates is, or was within two years of the Petition Date, a director, officer or employee of the Debtor; and (d) WWM does not have any interest or relationship that creates an actual conflict of interest preventing WWM from representing the Committee.

27. WWM has prepared a list of potentially interested parties and has sought to determine any prior or present representation of any creditors or parties-in-interest. WWM may have represented certain parties set forth on the list of potentially interested parties, all in matters unrelated to the Debtor or this case – and such representations are all described in the Naus Declaration.

28. The representations disclosed in the Naus Declaration are unrelated to the Debtor and this estate and do not create any actual conflict of interest. WWM will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or

relationships that could create an actual conflict are discovered, WWM will supplement its disclosure to the Court.

29. WWM's pre-petition service as bankruptcy counsel to the Ad Hoc Group, funded by the Diocese pursuant to the Pre-Negotiation Agreement, does not create a disqualifying conflict. As detailed in the Naus Declaration, the Diocese agreed to compensate WWM as part of facilitating arm's-length settlement negotiations with the Ad Hoc Group of attorneys representing abuse claimants, similar to how parties in complex litigation often agree to share mediation or expert costs. The Pre-Negotiation Agreement terminated on the Petition Date, the Diocese has no ongoing obligation to compensate WWM, WWM served as bankruptcy counsel to the coordinating attorney group at all times, and WWM seeks estate compensation only for post-petition work. This arrangement does not compromise WWM's ability to zealously represent the Committee or create any duty or loyalty to the Debtor.

30. To the extent that WWM becomes aware of a potential conflict, WWM will advise the Court and take appropriate action, including without limitation seeking the appointment of conflicts counsel, as necessary.

## TERMS OF RETENTION

31. Subject to the Court's approval of this Application, WWM intends to (a) charge for its legal services on an hourly basis in accordance with ordinary and customary hourly rates in effect on the date services are rendered and (b) seek reimbursement of actual and necessary expenses and other charges that WWM incurs.

32. WWM's hourly rates are set at a level designed to fairly compensate WWM for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned, and by geographic location

and market. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere. WWM's hourly fees are comparable to those charged by attorneys of similar experience and expertise for engagements of scope and complexity similar to this Chapter 11 case and are reasonable.

33. WWM proposes charging its standard hourly rates for attorneys and paraprofessionals working on this case, all subject to application and approval by this Court pursuant to Sections 330 and 331 of the Bankruptcy Code. The two WWM attorneys who will primarily work on this matter are R. Joseph Naus and Patrick L. McCune. The current hourly rates for attorneys who may work on this matter are as follows:

- R. Joseph Naus (Shareholder): $395.00/hour

- Patrick L. McCune (Shareholder): $395.00/hour

- Other attorneys as may be assigned: rates ranging from $350.00-$395/hour

- Paraprofessionals: $75/hour

34 WWM's hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere. WWM reserves the right to request that the rates be adjusted to reflect such periodic adjustments, subject to review and approval under Sections 330 and 331 of the Bankruptcy Code.

35. WWM will also seek reimbursement for actual and necessary expenses incurred in connection with its engagement by the Committee in this Chapter 11 Case, which may include, but are not limited to, postage, overnight mail, courier delivery, transportation, overtime expenses, computer assisted legal research, photocopying, outgoing facsimile transmissions, airfare, meals and lodging.

36. WWM intends to maintain detailed, contemporaneous time records and to apply to the Court for the allowance of compensation for professional services and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, any relevant local rules, and any additional procedures that may be established by the Court in this Chapter 11 Case. WWM has agreed to accept as compensation such sums as may be allowed by the Court. WWM understands that interim and final fee awards are subject to approval by this Court.

37. The Committee understands that WWM hereafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including, but not limited to Sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Guidelines for Professional Compensation established by the Office of the United States Trustee, and any relevant orders of this Court, for all services performed and expenses incurred after the Petition Date.

**REQUEST FOR APPROVAL AS OF OCTOBER 31, 2025**

38. The Committee requests that WWM's retention be approved as of October 31, 2025 (the Petition Date). As set forth above, WWM was retained by the Ad Hoc Group of coordinating attorneys pursuant to the Pre-Negotiation Agreement prior to the Petition Date to serve as bankruptcy counsel to the Ad Hoc Group. Under that agreement, the Debtor compensated WWM for its work through October 30, 2025. Upon termination of the Pre-Negotiation Agreement on the Petition Date, WWM continued to represent the interests of abuse claimants (including those who would later become Committee members) without compensation, accepting the possibility of a potential, future appointment as counsel to a creditors' committee.

39. The five members appointed to the Committee are represented by attorneys—Adam Horowitz of Horowitz Law, Daniel Meyer of Slater Slater Schulman, LLP, and N. Frank Elliott of N. Frank Elliott, III, LLC[5]—who were members of the Ad Hoc Group that pre-petition retained WWM as bankruptcy counsel. These attorneys worked with WWM during pre-petition negotiations, with WWM serving as bankruptcy counsel to the Ad Hoc Group. The Committee has now formally retained WWM. The Committee seeks approval of WWM's employment retroactive to the Petition Date so that WWM may seek compensation as an administrative expense under section 503(b) of the Bankruptcy Code for all work performed on behalf of creditors since October 31, 2025.

40. This retroactive approval is appropriate and in the best interests of the estate because:

(a) WWM possesses unique knowledge of the Debtor's financial affairs, the abuse claims, and the issues in this case, having served as bankruptcy counsel to the Ad Hoc Group of attorneys (including the attorneys now representing the Committee members) since before the bankruptcy filing and this institutional knowledge about this case would be lost if it had not continued the representation;

(b) WWM's representation of abuse claimants from the Petition Date forward has protected creditor interest as WWM has monitored the case and advocated for creditor interests during the critical early days of this bankruptcy case;

(c) It was important to continue efforts to ascertain if terms could be agreed to between those representing the interest of the abuse survivor claimants and the Diocese in relation to the restructuring efforts, which could result in the reduction of overall litigation costs for the estate and the preservation of estate assets available for distribution to claimants;

---

[5] The members of the Committee represented by N. Frank Ellio, III, LLC, are also represented by Salim-Beasley, LLC.

(d) There would be significant inefficiency and additional expense if the Committee were required to retain different counsel who would need substantial time to become familiar with the case;

(e) It was important to enter into discussions immediately with the U.S. Trustee regarding a possible committee including abuse survivor claimants, and to coordinate with those representing abuse survivor claimants regarding the same;

(f) The continuity of representation benefits all creditors and the estate; and

(g) WWM performed this post-petition work without any assurance of payment, undertaking significant financial risk to protect creditor interests.

## NOTICE

41. Notice of this Application has been provided to the Core Service List as defined in the Court's Interim Order Approving Debtor's Expedited Motion for an Order Authorizing and Approving Special Noticing and Confidentiality Procedures [Dkt. No. 93].

## NO PRIOR REQUEST

42. No previous request for the relief sought herein has been made by the Committee to this or any other court.

WHEREFORE, the Official Committee of Unsecured Creditors respectfully requests that the Court enter the proposed order submitted herewith: (a) granting this Application and entering the attached proposed order, (b) authorizing the Committee to retain and employ Wiener, Weiss & Madison, A Professional Corporation as of October 31, 2025, (c) authorizing WWM to apply for compensation from the estate for all professional services rendered and for reimbursement of any expenses incurred in connection with this employment, from and after October 31, 2025, as an administrative expense and as authorized by and in compliance with sections 330 and 331 and

other relevant provisions of the Bankruptcy Code, any applicable provisions of the Bankruptcy Rules, the Local Rules, and any relevant orders of this Court, and (d) for such other relief as this Court may deem just and proper.

Dated: December 23, 2025

                                    Respectfully submitted,

                                    By:    */s/ Patrick L. McCune*

WIENER, WEISS & MADISON, A.P.C.
Patrick L. McCune (La.#31863)
pmccune@wwmlaw.com
445 Louisiana Avenue
Baton Rouge, Louisiana 70802
Tel: 225-910-8084; Fax: 225-910-8082

AND

WIENER, WEISS & MADISON, A.P.C.
R. Joseph Naus (La.#17074)
rjnaus@wwmlaw.com
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, Louisiana 71120-1990
Tel: 318-226-9100
Fax: 318-424-5128

*Proposed Counsel to the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

       On December 23, 2025, I hereby certify that a true and correct copy of the foregoing Application was served by electronic notice upon all parties receiving notice via the Court's Electronic Case Filing system, and that service by U.S. mail, postage prepaid, was made on all other parties requiring service under the Core Service List.

                                /s/ *Patrick L. McCune*
                                Patrick L. McCune