## DECLARATION OF R. JOSEPH NAUS IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY WIENER, WEISS & MADISON, A PROFESSIONAL CORPORATION AS COUNSEL AND ITS REQUEST FOR RELATED RELIEF

Pursuant to 28 U.S.C. § 1746, I, R. Joseph Naus, hereby submit this declaration (this "Declaration") under penalty of perjury:

1.      I am a shareholder of the law firm of Wiener, Weiss & Madison, A Professional Corporation ("WWM"), with offices at 330 Marshall Street, Suite 1000, Shreveport, Louisiana 71101. I am currently admitted and in good standing as a member of the bar of the United States District Court and the United States Bankruptcy Court for the Western District of Louisiana. I am also admitted to practice before the U.S. Court of Appeals for the Fifth Circuit and all Louisiana State Courts. There are no disciplinary proceedings pending against me.

2.      I am authorized to make this declaration (the "Declaration") on behalf of WWM and the Declaration is submitted pursuant to Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure in support of the Application to Employ WWM ("Application"), as counsel for the Official Committee of Unsecured Creditors (the "Committee"). Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Application. The Application seeks an order pursuant to sections 328(a) and 1103(a)-(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") authorizing and approving the employment and retention of WWM as bankruptcy counsel for the Committee in this chapter 11 case ("Chapter 11 Case" or "Case").

3.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto. Capitalized terms and phrases not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

## I. BACKGROUND OF WWM'S REPRESENTATION

### A. Pre-Negotiation Agreement and Retention by Ad Hoc Group

4.      In early 2025, as it became apparent that the Diocese of Alexandria ( the "Diocese") might file for bankruptcy protection, attorneys representing abuse survivors began organizing to coordinate their clients' interests and prepare for potential bankruptcy proceedings. This group of coordinating counsel, which became known as the ad hoc group (the "Ad Hoc Group"), sought to retain legal counsel with expertise in bankruptcy law to assist in coordinating representation of their clients' collective interests in potential bankruptcy proceedings.

5.      In or around March 2025, the Ad Hoc Group—consisting of attorneys John Randall Whaley of the Whaley Law Firm; Robert L. Salim, of Salim-Beasley, LLC; T. Taylor Townsend, of T. Taylor Townsend, LLC; N. Frank Elliot III, of N. Frank Elliot III, LLC; Adam Horowitz of Horowitz Law; and Daniel Meyer of Slater Slater Schulman, LLP; and other counsel representing abuse survivors—contacted WWM and my partner Patrick L. McCune and me regarding potential representation. After several discussions about the scope of representation, potential conflicts, and the need for experienced bankruptcy counsel to coordinate the representation of abuse claimants' collective interests, the Ad Hoc Group determined to retain WWM as bankruptcy counsel to the Ad Hoc Group.

6.      Simultaneously, the Diocese and the Ad Hoc Group were negotiating the terms of a pre-negotiation agreement to facilitate settlement discussions. The Diocese and Ad Hoc Group entered into a Pre-Negotiation Letter Agreement dated April 17, 2025, ("Pre-Negotiation Letter") to facilitate settlement discussions and negotiations in regard to the anticipated bankruptcy filing

by the Diocese. A copy of the executed Pre-Negotiation Letter is attached to the Application as **Exhibit "3"** and incorporated herein by reference. On October 23, 2025, an Amendment No. 1 to the Pre-Negotiation Letter Agreement ("Pre-Negotiation Letter Amendment") was signed by the Chairperson of the Ad Hoc Group, Counsel for the Ad Hoc Group, and Counsel for the Diocese, a copy of which is attached to the Application as **Exhibit "4"**. Together the Pre-Negotiation Letter with the Pre-Negotiation Letter Amendment are referred to herein as the "Pre-Negotiation Agreement".

7. Section 4 of the Pre-Negotiation Agreement addressed the payment of WWM's legal fees and expenses. Specifically, the Diocese agreed to pay WWM's reasonable and documented fees and expenses ("Legal Fees") as Group Counsel to the Ad Hoc Group, as follows:

(a) The Diocese paid WWM a $50,000 retainer on the effective date of the Pre-Negotiation Agreement (April 1, 2025). Under the agreement, WWM was authorized to apply up to $15,000 of this retainer to work performed before the agreement was signed, with the balance held for future work or to cover any unpaid monthly invoices.

(b) The Diocese agreed to pay up to $30,000 per month for Legal Fees incurred during the term of the agreement. WWM was required to provide redacted monthly invoices to the Diocese, and the Diocese had 30 days to pay each invoice.

(c) If the Diocese failed to timely pay any invoice or if WWM had reason to believe a bankruptcy filing was imminent, WWM was authorized to apply funds from the retainer to unpaid invoices.

8. The Pre-Negotiation Agreement expressly provided that it would terminate upon the filing of a bankruptcy petition by or against the Diocese. *See* Pre-Negotiation Agreement § 9(c). The agreement further stated: "the Diocese will continue to be responsible for and pay the

Legal Fees and the fees of the Advisor (if any) incurred on or before the effective date of the terminations described in those subsections." Pre-Negotiation Agreement § 9(d).

9.     I want to be clear about the scope and limitations of the Pre-Negotiation Agreement as it relates to WWM's compensation:

(a) The Pre-Negotiation Agreement was executed by the Diocese, the Ad Hoc Group (comprised of the coordinating attorneys), and WWM (as bankruptcy counsel to the Ad Hoc Group). WWM signed the agreement and acknowledged and agreed to its terms, including the provisions regarding WWM's compensation. WWM's role under the agreement was to provide bankruptcy counsel to the Ad Hoc Group of coordinating attorneys in connection with their representation of abuse survivors in settlement negotiations with the Diocese.

(b) The Diocese's agreement to pay WWM's fees was solely in its capacity as a counterparty to the Pre-Negotiation Agreement negotiating with the Ad Hoc Group, not in any fiduciary capacity.

(c) The payment arrangement did not create any attorney-client relationship between WWM and the Diocese. Section 4 of the Pre-Negotiation Agreement explicitly stated "this Agreement shall not constitute an attorney-client relationship between Group Counsel [, WWM,] and the Diocese and shall not constitute a waiver of the attorney-client privilege between Group Counsel [,WWM,] and the Ad Hoc Group." WWM at all times served as bankruptcy counsel to the Ad Hoc Group of coordinating attorneys.

(d) The arrangement does not create any conflict or interest adverse to the estate. The Diocese voluntarily agreed to compensate WWM for providing bankruptcy counsel to

the Ad Hoc Group as part of facilitating good-faith settlement negotiations, similar to how parties in litigation often agree to share expert or mediation costs.

**B. Work Performed Under Pre-Negotiation Agreement (Through October 30, 2025)**

10.     Through October 30, 2025 (the day before the Petition Date), WWM performed extensive legal services as bankruptcy counsel to the Ad Hoc Group pursuant to the Pre-Negotiation Agreement. This work included providing bankruptcy counsel and coordination services to the Ad Hoc Group attorneys in their representation of abuse survivors, including:

(a) Investigating and analyzing potential claims against the Diocese, including reviewing historical records, coordinating with Ad Hoc Group attorneys regarding their clients' claims, and consulting with the Ad Hoc Group attorneys and other counsel representing abuse survivors;

(b) Analyzing the Diocese's financial condition, including reviewing financial statements, identifying assets, investigating potential transfers, and assessing the Diocese's ability to fund a settlement or plan;

(c) Participating in multiple mediation sessions with the Diocese, facilitated by John W. Perry, Jr. of Baton Rouge, Louisiana;

(d) Drafting and negotiating term sheets and discussing potential settlement structures;

(e) Reviewing documents provided by the Diocese in response to information requests under the Pre-Negotiation Agreement;

(f) Coordinating with other attorneys representing abuse claimants and facilitating the expansion of the Ad Hoc Group as additional claimants and counsel joined;

(g) Advising the Ad Hoc Group regarding their legal rights, potential recoveries in bankruptcy versus litigation, and strategic considerations;

(h) Monitoring ongoing state court litigation and advising regarding the provisions of the Pre-Negotiation Agreement;

(i) Legal research regarding bankruptcy issues specific to Catholic diocese cases, including insurance coverage issues, parish liability, and plan structures; and

(j) Preparing for a potential bankruptcy filing by the Diocese, including preliminary work on claims analysis and recovery strategies.

11.     WWM submitted redacted monthly invoices to the Diocese pursuant to Section 4(b) of the Pre-Negotiation Agreement for work performed from April through October 2025. The Diocese paid these invoices in accordance with the agreement's terms. All fees and expenses incurred by WWM for work performed through October 30, 2025, were paid by the Diocese pursuant to the Pre-Negotiation Agreement. WWM is not seeking, and will not seek, compensation from the estate for any services rendered prior to the Petition Date (October 31, 2025).

## C. Termination of Pre-Negotiation Agreement and Post-Petition Work

12.     On October 31, 2025, the Diocese filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Upon this filing, the Pre-Negotiation Agreement automatically terminated by its express terms. *See* Pre-Negotiation Agreement § 9(c).

13.     After the Petition Date, WWM faced a decision: whether to continue providing bankruptcy counsel to attorneys representing abuse claimants without compensation, in the hope that a creditors' committee would be formed and WWM would be retained by that committee, or whether to cease representation and allow the abuse claimants and their counsel to seek other bankruptcy counsel.

14. Given WWM's extensive knowledge of this case, the Ad Hoc Group attorneys' reliance on WWM's bankruptcy counsel, the effort to continue negotiations on possible agreed terms for restructuring, and the importance of protecting creditor interests during the early days of a bankruptcy case, at the request of Ad Hoc Group attorneys, WWM determined to continue providing bankruptcy counsel without compensation. From October 31, 2025, through November 21, 2025 (when the Committee was appointed), WWM performed substantial work on behalf of abuse claimants and their attorneys, including:

(a) monitoring docket filings and court proceedings; and

(b) coordinating with other counsel representing abuse claimants;

(c) advising attorneys for abuse survivor claimants regarding the automatic stay, claims filing deadlines, and the status of the bankruptcy case;

(d) attending the hearing on first day motions;

(e) continuing to facilitate and support negotiations for possible agreed terms for restructuring between Ad Hoc Group attorneys representing abuse survivor claimants and the Diocese, including a potential agreed restructuring support agreement;

(f) communicating with the Office of the United States Trustee regarding the formation of a creditors' committee with representation for abuse survivor claimants and coordinating with Ad Hoc Group attorneys to support the same;

15. WWM performed this post-petition work without any assurance that it would be compensated. It undertook this work because:

(a) The Ad Hoc Group attorneys representing the interest of the abuse survivor claimants, creditors in this case, needed experienced bankruptcy counsel during this critical period to provide counsel regarding the general interest of the abuse survivor claimants;

(b) It was important to continue efforts to ascertain if terms could be agreed to between those representing the interest of the abuse survivor claimants and the Diocese in relation to the restructuring efforts, which could result in the reduction of overall litigation costs for the estate and the preservation of estate assets available for distribution to claimants;

(c) WWM possessed institutional knowledge about this case that would be lost if it did not continue the representation;

(d) It was important to enter into discussions immediately with the U.S. Trustee regarding a possible committee including abuse survivor claimants, and to coordinate with those representing abuse survivor claimants regarding the same;

(e) WWM anticipated that if a creditors' committee were formed, that the committee would likely include abuse claimants whose attorneys were members of the Ad Hoc Group that WWM had been advising; and

(f) If the Committee retained WWM, it could submit a request for compensation from the estate as an administrative expense for post-petition work.

16. WWM did not bill the Diocese for any work performed on or after October 31, 2025. WWM did not seek compensation from the Ad Hoc Group attorneys or from individual abuse claimants for post-petition work. WWM performed this work at its own financial risk.

**D. Committee Formation and Retention of WWM**

17. On November 21, 2025, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors pursuant to sections 1102(a) and 1102(b)(1) of the Bankruptcy Code. The five members appointed to the Committee are: Clint Allen (Acting Chairperson), Daniel Mejias, Rachael Moreno, Micheal Williams, and Thomas Defatta. All five

Committee members are represented by attorneys—Adam Horowitz of Horowitz Law, Daniel Meyer of Slater Slater Schulman, LLP, and N. Frank Elliott of N. Frank Elliott, III, LLC[1]—who were members of the Ad Hoc Group that pre-petition retained WWM as bankruptcy counsel. These attorneys signed the Pre-Negotiation Letter as members of the Ad Hoc Group.

18.     The Committee held its first meeting on December 1, 2025. At that meeting, I presented information to the Committee regarding WWM's qualifications, experience, and knowledge of this case. The Committee members had the opportunity to ask questions about WWM's representation, our fee structure, and our approach to committee representation.

19.     After discussion, the Committee unanimously voted to formally retain WWM as counsel to the Committee. The Committee considered that:

(a) WWM possesses unique knowledge of this case, having provided bankruptcy counsel to the Ad Hoc Group of attorneys now representing the Committee members;

(b) WWM's continued representation would provide valuable continuity and efficiency;

(c) The work WWM performed from the Petition Date forward had protected and advanced creditor interests; and

(d) Retaining different counsel would result in significant duplication of effort and additional expense as new counsel became familiar with the case.

20.     The Committee now seeks court approval of WWM's employment as of October 31, 2025 (the Petition Date) so that WWM may seek compensation as an administrative expense under section 503(b) of the Bankruptcy Code, or as otherwise authorized by the Court, for all post-petition work it performed. To be clear:

---

[1] The members of the Committee represented by N. Frank Ellio, III, LLC, are also represented by Salim-Beasley, LLC.

(a) WWM seeks compensation from the estate only for work performed on and after October 31, 2025;

(b) All fees and expenses for work performed through October 30, 2025, have been paid by the Diocese pursuant to the Pre-Negotiation Agreement, and WWM is not seeking reimbursement from the estate for any pre-petition work;

(c) The Pre-Negotiation Agreement terminated by its terms on October 31, 2025, and no payments have been made to WWM by the Diocese for any post-petition work;

(e) WWM will ensure that no "double billing" occurs and that the estate is charged only for post-petition work. WWM's pre-petition work as bankruptcy counsel to the Ad Hoc Group of coordinating attorneys was fully compensated by the Diocese under the Pre-Negotiation Agreement.

## II. QUALIFICATION OF PROFESSIONALS

21. WWM understands that the Committee selected WWM as its counsel because of WWM's substantial experience in Chapter 11 reorganization cases, WWM being one of the few firms in north Louisiana with an active Chapter 11 practice, and specifically because of WWM's familiarity with this case and the issues facing abuse survivor claimants, having served as bankruptcy counsel to the Ad Hoc Group of attorneys now representing the Committee members. WWM believes it has assembled a highly qualified team of attorneys to provide services to the Committee.

22. I am a shareholder in WWM's Bankruptcy and Restructuring practice group and generally will be responsible for leading WWM's representation of the Committee in this chapter 11 case, along with my partner Patrick L. McCune. I have extensive experience in bankruptcy and restructuring matters. I graduated cum laude from the University of Notre Dame with a B.A.

degree, and cum laude from Tulane University School of Law with a J.D. degree. I have been actively engaged in the practice of law since approximately 1985, with approximately 40 years of experience. My practice areas include bankruptcy and creditors' rights, business and corporate law, commercial litigation, and collection law.

23.     Patrick L. McCune is also a shareholder in WWM and will serve as lead counsel for the Committee along with me. Mr. McCune graduated with honors from LSU Law Center in 2008, where he also received a Masters of Business Administration degree. Following law school, he served as a law clerk to Justice Jeffrey P. Victory of the Louisiana Supreme Court, Judge Tom E. Stagg of the United States District Court for the Western District of Louisiana, and Judge Katharine M. Samson of the United States Bankruptcy Court for the Southern District of Mississippi. Mr. McCune's practice focuses on appellate litigation, bankruptcy (with particular emphasis on creditor's rights and litigation in bankruptcy court), foreclosures, and commercial litigation. He is licensed to practice in Louisiana, Texas, Mississippi, and Florida.

24.     WWM is a well-established law firm founded in 1932 by the late Jacques L. Wiener. The firm has offices in Shreveport and Baton Rouge, Louisiana, with approximately 17 shareholders. WWM is one of the few firms with an active Chapter 11 practice in north Louisiana. The firm represents debtors and creditors in Chapter 7, 11, 12, and 13 proceedings, and has decades of hands-on experience in bankruptcy and creditors' rights matters.

## III. SERVICES TO BE RENDERED

25.     The Committee has retained WWM as counsel and has requested that WWM render various services to the Committee in connection with this case including, inter alia:

(a) assisting, advising and representing the Committee in its consultations with the Debtor regarding the administration of this case;

(b) assisting, advising and representing the Committee in analyzing the Debtor's assets and liabilities, investigating the extent and validity of liens or other interests in the Debtor's property and participating in and reviewing any proposed asset sales, any asset dispositions, financing arrangements and cash collateral stipulations or proceedings;

(c) reviewing and analyzing all applications, motions, orders, statements of operations and schedules filed with the Court by the Debtor or third parties, advising the Committee as to their propriety, and, after consultation with the Committee, taking appropriate action;

(d) preparing necessary applications, motions, answers, responses, objections, oppositions, orders, reports and other legal papers on behalf of the Committee;

(e) representing the Committee at hearings held before the Court and communicating with the Committee regarding the issues raised, as well as the decisions of the Court;

(f) performing all other legal services for the Committee which may be necessary and proper in this Case and any related proceeding(s);

(g) representing the Committee in connection with any litigation, disputes or other matters that may arise in connection with this Case or any related proceeding(s);

(h) assisting, advising and representing the Committee in any manner relevant to reviewing and determining the Debtor's rights and obligations under leases and other executory contracts;

(i) assisting, advising and representing the Committee in investigating the acts, conduct, assets, liabilities and financial condition of the Debtor, the Debtor's operations

and the desirability of the continuance of any portion of those operations, and any other matters relevant to this Case;

(j) assisting, advising and representing the Committee in their participation in the negotiation, formulation and drafting of a plan of liquidation or reorganization or documents related thereto;

(k) assisting, advising and representing the Committee on the issues concerning the appointment of a trustee or examiner under section 1104 of the Bankruptcy Code;

(l) assisting, advising and representing the Committee in understanding its powers and its duties under the Bankruptcy Code and the Bankruptcy Rules and in performing other services as are in the interests of those represented by the Committee;

(m) assisting, advising and representing the Committee in the evaluation of claims and on any litigation matters, including avoidance actions; and

(n) providing such other services to the Committee as may be necessary in this Case or any related proceeding(s).

26.    Subject to this Court's approval of the Application, WWM is willing to serve as the Committee's counsel and to perform the services described above.

## IV. DISINTERESTEDNESS OF WWM, LACK OF ADVERSE INTEREST AND SPECIFIC DISCLOSURES

27.    To the best of my knowledge, except as set forth herein, (a) WWM has no connections with the Debtor, creditors of the Debtor, the United States Trustee for the Western District of Louisiana (the "U.S. Trustee"), persons employed in the office of the U.S. Trustee or any other party with an actual or potential interest in the chapter 11 case or their respective attorneys or accountants; (b) WWM is not a creditor, equity security holder or insider of the

Debtor; (c) none of WWM's shareholders or associates is, or was within two years of the Petition Date, a director, officer or employee of the Debtor; and (d) WWM does not have any relationship or interest that creates an actual conflict of interest preventing WWM from representing the Committee.

28.     I want to address specifically the nature of WWM's representation and the implications under sections 328(a) and 1103(a)-(b) of the Bankruptcy Code, the sections addressing employment of counsel for a committee, and any related provisions, including section 328(c):

(a) **WWM represents creditors.** WWM represented the Ad Hoc Group pre-petition and now seek to represent the Committee, which is composed of abuse survivor claimants holding unsecured claims against the Debtor. This representation naturally involves advocating for creditor interests, which may be adverse to the Debtor's positions on various substantive issues in this case, including plan terms, asset valuations, claims treatment, insurance coverage, and potential avoidance actions or other litigation.

(b) **This adversity is inherent and permitted.** Sections 328(a) and 1103(a), the provisions authorizing a committee appointed under section 1102 to employ counsel for that committee, grant broad authority for a committee to employ counsel of its choosing. Section 1103(a) states that an attorney (and by extension law firm) employed to represent a committee appointed under section 11 U.S.C. § 1102 may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. 1103(b) also states that "[r]epresentation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest." Similarly, Section 327(c) of the Bankruptcy Code (addressing employment by a

debtor-in-possession or trustee of the estate as opposed to employment by an § 1102 committee of committee counsel under § 1103), expressly provides that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." The adversity inherent in representing creditors against a debtor does not constitute a disqualifying "actual conflict of interest" under section 327(c) or 328, and, considering section 1103(b), the aforementioned representation is certainly not adverse to, but rather aligned with the interest of the Committee.

(c) **The Pre-Negotiation Agreement does not create a disqualifying conflict.** WWM's pre-petition representation of the Ad Hoc Group, funded by the Diocese pursuant to the Pre-Negotiation Agreement, does not create a disqualifying conflict for the following reasons:

(i) The Pre-Negotiation Agreement was an arm's-length agreement between the Diocese and the Ad Hoc Group to facilitate settlement negotiations. It is common in complex litigation for parties to agree to share certain costs (such as mediator fees, expert fees, or in this case, the Ad Hoc Group's legal fees) to facilitate productive settlement discussions.

(ii) The Diocese agreed to pay WWM's fees in its capacity as a counterparty negotiating with the Ad Hoc Group, not in any fiduciary capacity. The payment arrangement was part of the overall settlement negotiation framework and created no attorney-client relationship between WWM and the Diocese, in fact the agreement specified this.

(iii) WWM at all times served as bankruptcy counsel to the Ad Hoc Group of coordinating attorneys representing abuse survivors. The payment arrangement did not obligate WWM to consider the Diocese's interests, did not limit WWM's ability to zealously provide bankruptcy counsel to the Ad Hoc Group, and did not create any duty of loyalty to the Diocese

(iv) The Pre-Negotiation Agreement terminated by its terms on the Petition Date. The Diocese has no ongoing obligation to pay WWM, and WWM has no ongoing relationship with the Diocese based on that agreement.

(v) WWM seeks compensation from the estate only for post-petition work performed on behalf of creditors (first the Ad Hoc Group members representing the interest of the abuse survivor claimants, and subsequently the Committee). WWM is not seeking estate compensation for any work paid by the Diocese under the Pre-Negotiation Agreement. There is complete separation between pre-petition work (Diocese-paid) and post-petition work (estate compensation sought).

(d) **No actual conflict exists and no adverse interest.** WWM does not have any relationship, connection, or interest that creates an actual conflict of interest preventing WWM from zealously and effectively representing the Committee. WWM has no duty or loyalty to the Debtor, no financial interest in the Debtor, and no relationship with the Debtor that would compromise WWM's representation of the Committee. WWM does not hold any interest adverse to the Committee that would disqualify it from service as Committee counsel, and has not represented and does not currently represent any person or entity with an interest adverse to the interest of the Committee in this case which would disqualify it from serving as Committee counsel.

29.     In preparing this Declaration, we used a set of procedures established by WWM to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding retention of professionals by a committee under the Bankruptcy Code.

30.     In that regard, WWM compiled a list including the Debtor, Debtor's counsel, the list of the 20 largest unsecured creditors filed by the Debtor, a list of the insurance companies that have filed notices of appearance, and their counsel, the United States Trustee and its counsel of record (collectively the "Potential Parties in Interest"). The Potential Parties in Interest are listed on **Schedule 1** attached hereto.

31.     WWM conducted conflict check of its shareholders, requesting that all of its shareholders report any current or former representation of the Potential Parties in Interest and, in relation to the attorneys included in that list, any relationships or connections with the attorneys beyond encountering or interacting with such attorneys in the regular course of the practice of law. All shareholders responded to this request.

32.     Except as described herein (see the discussion on the Ad Hoc Group, etc.), insofar as I have been able to ascertain, neither I, WWM, nor any shareholder, associate or other counsel associated with WWM, has in the past represented any Potential Party in Interest, except that WWM has previously represented Sabine State Bank (included in the Debtor's list of its twenty (20) largest unsecured creditors) in unrelated matters over three years ago. Further, it is anticipated that beginning in February of 2026, WWM may represent Sabine State Bank in other, unrelated matters going forward. Additionally, it is WWM's understanding that the claim of Sabine State Bank against the estate is based on the Debtor's guaranty of a debt this is secured by a mortgage on immovable property of the non-debtor borrower and that the fair market value of the mortgaged property is worth more than the amount of the borrower's debt to Sabine State Bank.

33.     I do not believe that there is any connection or interest (as such terms are used in section 101(14)(C) of the Bankruptcy Code and Bankruptcy Rule 2014(a)) between WWM and (i) the United States Trustee or any person employed by the Office of the United States Trustee, or (ii) any counsel, accountants, financial consultants and investment bankers who represent or may represent claimants or other parties in interest in these cases. WWM's interactions with professionals or firms who/which may fall into the latter category are limited to interactions based on the ordinary course of the practice of law. As part of its practice, WWM appears in cases, proceedings, and transactions involving many different attorneys, co-counsel, accountants, financial consultants and investment bankers, some of which now or may in the future represent claimants and parties in interest in these cases. WWM has not and will not represent any such entities in relation to the Debtor and this chapter 11 case nor have any relationship with any such entities that would be adverse to the matters upon which WWM is to be employed.

34.     Neither WWM nor any attorney or employee at WWM is or was a creditor, an equity holder, or an insider of the Debtor.

35.     Neither WWM nor any attorney or employee at WWM is or was, within two years before the Petition Date, a director, officer or employee of the Debtor.

36.     WWM's representation of the Committee necessarily involves advocating for creditor interests that may be adverse to positions taken by the Debtor on various substantive issues in this case. This adversity is inherent in the role of committee counsel and is not a disqualifying conflict. WWM does not have any relationship, connection, or interest that creates an actual conflict of interest preventing WWM from representing the Committee, and WWM does not have any materially adverse interest by reason of any direct or indirect relationship to, or connection with, the Debtor that would disqualify WWM under the Bankruptcy Code. WWM also does not

hold any interest adverse to the Committee that would subject it to possible reduction in compensation as Committee counsel under section 328(c), and has not represented and does not currently represent any person or entity with an interest adverse to the interest of the Committee in this case which would disqualify it from serving as Committee counsel under section 1103(b).

37.     WWM has instituted and is carrying on further inquiries of its shareholders with respect to the matters contained herein. WWM will file supplemental declarations regarding this retention if any additional relevant information comes to its attention.

38.     In view of the foregoing, WWM is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and does not have any actual conflict of interest that would disqualify WWM from serving as Committee counsel under the standards referenced in section 327 and 328 of the Bankruptcy Code; further, WWM does not hold any interest adverse to the Committee that would subject it to possible reduction in compensation as Committee counsel under section 328(c), and has not represented and does not currently represent any person or entity with an interest adverse to the interest of the Committee in this case which would disqualify it from serving as Committee counsel under section 1103(b).

## V. TERMS OF RETENTION

39.     Subject to the Court's approval of this Application, WWM intends to (a) charge for its legal services on an hourly basis in accordance with its standard hourly rates in effect on the date services are rendered and (b) seek reimbursement of actual and necessary expenses and other charges that WWM incurs.

40.     WWM's hourly rates are set at a level designed to fairly compensate WWM for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned, and by geographic location

and market. WWM's hourly fees are comparable to those charged by attorneys of similar experience and expertise for engagements of scope and complexity similar to this Chapter 11 Case and are reasonable.

41.     The current hourly rates for the WWM professionals who will primarily work on this matter are as follows:

- R. Joseph Naus (Shareholder): $395.00/hour
- Patrick L. McCune (Shareholder): $395.00/hour
- Other attorneys as may be assigned: rates ranging from $350.00-$395.00/hour
- Paraprofessionals: $75.00/hour

42.     WWM respectfully submits that such rates are reasonable in light of the quality of the services being provided and the specialized nature of the services being provided. Additionally, WWM's rates are consistent with the market for large Chapter 11 cases regionally. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.

43.     WWM will also seek reimbursement for actual and necessary expenses incurred in connection with its engagement by the Committee in this Chapter 11 Case, which may include, but are not limited to, postage, overnight mail, courier delivery, transportation, overtime expenses, computer assisted legal research, photocopying, outgoing facsimile transmissions, airfare, meals and lodging.

44.     WWM intends to maintain detailed, contemporaneous time records and to apply to the Court for the allowance of compensation for professional services and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules, and any additional procedures that may be established by the Court in this Chapter

11 Case. WWM has agreed to accept as compensation such sums as may be allowed by the Court. WWM understands that interim and final fee awards are subject to approval by this Court.

45.     The Committee understands that WWM hereafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, including, but not limited to Sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Guidelines for Professional Compensation established by the Office of the United States Trustee, and any relevant orders of this Court, for all services performed and expenses incurred after the Petition Date. It is further contemplated that WWM may seek interim compensation during this case as permitted by Section 331 of the Bankruptcy Code, Bankruptcy Rule 2016, this Court's "Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals" [Dkt. No. 53], and any other relevant orders of this Court. WWM understands that its compensation is subject to prior Court approval.

46.     WWM will ensure that no "double billing" occurs and that the estate is charged only for post-petition work performed on and after October 31, 2025.

47.     I understand there is a continuing duty to disclose any adverse interest and change of disinterestedness.

48.     I agree to promptly disclose any actual conflict of which I become aware during the course of WWM's representation of the Committee.

49.     I understand that the Court's approval of the application is not approval of any proposed terms of compensation and under § 328(a) the court may allow compensation on terms different from those proposed.

50.     WWM has not received any retainer from the Debtor, the Committee, or any member of the Committee (other than the $50,000 retainer paid by the Diocese to WWM under the Pre-Negotiation Agreement, which has been applied to pre-petition work and which does not relate to WWM's representation of the Committee), nor has WWM received any payment or promise of payment for post-petition work. No compensation has been paid or promised to be paid from a source other than the Debtor's estate in this Chapter 11 Case for post-petition work. No promises have been received by WWM nor by any shareholders, of counsel or associate thereof as to compensation in connection with this Case other than in accordance with the provisions of the Bankruptcy Code. WWM has no agreement with any other entity to share with such entity any compensation received by WWM in connection with this Case, except among the shareholders, of counsel, and associates of WWM. Neither the Committee nor any of its representatives are or will be liable for fees or costs incurred by WWM in its representation of the Committee.

51.     WWM further states, in an abundance of caution and in the interest of additional disclosure, considering the requirements for attorneys for the debtor (versus committee counsel) pursuant to Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the shareholders, counsel and associates of WWM, or (b) any compensation another person or party has received or may receive.

52.     I am not aware of anyone who objects to WWM's employment.


[This space is intentionally left blank to allow for a signature page.]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on December 23, 2025 at Shreveport, Louisiana.

BY: _____
R. Joseph Naus

# SCHEDULE 1

**SUBMITTED AS PART OF AND IN SUPPORT OF THE DECLARATION OF R. JOSEPH NAUS IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY WIENER, WEISS & MADISON, A PROFESSIONAL CORPORATION AS COUNSEL AND ITS REQUEST FOR RELATED RELIEF**

**List of "Potential Parties in Interest" (as defined in the aforementioned declaration).**

This is a list of "Potential Parties in Interest" (defined in the aforementioned declaration by R. Joseph Naus) which, considering relevant law, including Rule 2014 of the Federal Rules of Bankruptcy Procedure, was circulated to the shareholders of Wiener, Weiss & Madison, A Professional Corporation ("WWM"), as part of an analysis of any connections between WWM and the Potential Parties in Interest.

**The Official Committee of Unsecured Creditors in the Bankruptcy Case filed by the Diocese of Alexandria**

**Acting Committee Chairperson and counsel:**
Clint Allen, individually represented by Adam Horowitz and Jessica D. Arbour of Horowitz Law

**Other Committee Members and counsel:**
Daniel Mejias, individually represented by Daniel Meyer of Slater Slater Schulman, LLP
Rachael Moreno, individually represented by Daniel Meyer of Slater Slater Schulman, LLP
Micheal Williams, individually represented by N. Frank Elliott of N. Frank Elliott, III, LLC
Thomas Defatta, individually represented by N. Frank Elliott of N. Frank Elliott, III, LLC

**Debtor**
Diocese of Alexandria

**Debtor's Attorneys:**

1.      Gold, Weems, Bruser, Sues & Rundell including Bradley L. Drell and Heather M. Mathews;
2.      Husch Blackwell including Lindsey Greenawald, Frank LoCoco and Mark Benedict

**The Top 20 Unsecured Creditors as Disclosed by the Debtor in D.E. 24**
AT&T
Atmos Energy
Atmos Energy *
City of Alexandria
City of Alexandria *
City of Alexandria *

1

City of Pineville
City of Pineville *
CLECO
CLECO *
Diocese of Alexandria Priest Ret
Franciscan U of Steubenville
Kinetix 400
Optimum
Optimum *
Optimum *
Sabine State Bank
Waste Connections Alexandria
Waste Connections Alexandria *
Waterworks District No. 3

\* The multiple listings of certain names above, marked by asterisks, are not typos, but reflect the creditors as listed in the list at D.E. 24.

**US Trustee for region 5** David W. Asbach, represented by Antony Constantini

**Insurance Companies and their counsel**

1. Interstate Fire & Casualty Company

    a. Fishman Haygood, L.L.P., including Tristan E. Manthey

    b. Fishman Haygood, L.L.P., including Cherie D. Nobles

    c. Parker, Hudson, Rainer & Dobbs L.L.P., including Harris Winsberg

    d. Parker, Hudson, Rainer & Dobbs L.L.P., including Todd C. Jacobs

    e. Parker, Hudson, Rainer & Dobbs L.L.P., including Matthew Michael Weiss

    f. Parker, Hudson, Rainer & Dobbs L.L.P., including John Bucheit

    g. Parker, Hudson, Rainer & Dobbs L.L.P., including Matthew Roberts

2. Continental Casualty Company, The Continental Insurance Company

    a. Plevin & Turner LLP, including Mark D. Plevin

    b. Plevin & Turner LLP, including Miranda H. Turner

    c. The Derbes Law Firm, LLC, including Albert J. Derbes, IV

    d. The Derbes Law Firm, LLC, including Patrick S. Garrity

2

      e. The Derbes Law Firm, LLC, including McKenna D. Dorais

      f. Plevin & Turner LLP, including Ryan C. Evans

3. Swiss Re America Corporation as Administrator for 21st Century Premier Insurance Company fka Colonial Penn

      a. Clyde & Co US LLP, including Catalina J. Sugayan

      b. Clyde & Co US LLP, including James J. Moffitt

      c. Clyde & Co US LLP, including Yongli Yang

      d. Shar Garner Cahill Richter Klein & Hilbert, L.L.C., including Thomas J. Madigan, II

4. Tenecom Ltd. fka Yasuda Fire & Marine Insurance Co. (UK) Ltd., RiverStone Insurance UK Limited (as successor in interest to Terra Nova Insurance Co. Ltd. and Sphere Drake Insurance Co. PLC), Catalina Worthing Insurance Ltd (CWIL) f/k/a Hartford Financial Products International (as Part VII transferee of Excess Insurance Co. Ltd.), Certain Underwriters at Lloyds, London subscribing to Policy Nos. SL 3741/SLC 5762, ISL 3132/ICO 4087, ISL 3670/ICO 5364, and ISL 3924/ICO 5559

      a. Clyde & Co US LLP, including Catalina J. Sugayan

5. Catalina Worthing Insurance Ltd (CWIL) f/k/a Hartford Financial Products International (as Part VII transferee of Excess Insurance Co. Ltd.), Certain Underwriters at Lloyds, London subscribing to Policy Nos. SL 3741/SLC 5762, ISL 3132/ICO 4087, ISL 3670/ICO 5364, and ISL 3924/ICO 5559, RiverStone Insurance UK Limited (as successor in interest to Terra Nova Insurance Co. Ltd. and Sphere Drake Insurance Co. PLC), Tenecom Ltd. fka Yasuda Fire & Marine Insurance Co. (UK) Ltd.

      a. Clyde & Co US LLP, including James J. Moffitt

      b. Clyde & Co US LLP, including Yongli Yang

      c. Clyde & Co US LLP, including Catalina J. Sugayan

      d. Shar Garner Cahill Richter Klein & Hilbert, L.L.C., including Thomas J. Madigan, II