

LEO GOLD (1907 - 1987)
GEORGE B. HALL (1924 - 1971)
PEGGY D. ST. JOHN (1953 - 2017)
F. A. LITTLE, JR. (1937 - 2024)

CHARLES S. WEEMS, III
EUGENE J. SUES
RANDALL L. WILMORE
DORRELL J. BRISTER [1, 2, 3]
GREGORY B. UPTON
RANDALL M. SEESER
MICHAEL J. O'SHEE
BRANDON A. SUES
TREVOR S. FRY [2, 5]
BRADLEY L. DRELL [4]
STEVEN M. OXENHANDLER
STEPHEN A. LAFLEUR
HEATHER M. MATHEWS [2]
B. GENE TAYLOR, III
LESLIE E. HALLE [3]
EVELYN I. BREITHAUPT [2]
JOSHUA J. DARA, DR.

R. MORGAN BRIGGS
CONNOR C. HEADRICK
CONNER L. DILLON
DANIEL T. MARLER
JONATHON M. BRANTON
CALEB J. O'CONNELL
AMBER L. LABORDE

OF COUNSEL:
CAMILLE F. GRAVEL (1915 - 2005)
HENRY B. BRUSER, III
EDWARD E. RUNDELL [2]

[1] SPECIALIST IN TAXATION, CERTIFIED BY LA BOARD OF LEGAL SPECIALIZATION
[2] ALSO ADMITTED IN TEXAS
[3] SPECIALIST IN ESTATE PLANNING & ADMINISTRATION, CERTIFIED BY LA BOARD OF LEGAL SPECIALIZATION
[4] SPECIALIST IN BUSINESS BANKRUPTCY, CERTIFIED BY LA BOARD OF LEGAL SPECIALIZATION
[5] ALSO ADMITTED IN MONTANA

**GOLD WEEMS**
BRUSER SUES & RUNDELL

A Professional Law Corporation
2001 MacArthur Drive
Post Office Box 6118
Alexandria, Louisiana 71307-6118
Tel: (318) 445-6471    Fax: (318) 445-6476
Toll free: (866) 302-6283
www.goldweems.com

WRITER'S EMAIL: gupton@goldweems.com

April 17, 2025

EXHIBIT
3

**VIA email-rjnaus@wwmlaw.com**

Ad Hoc Group
c/o Wiener, Weiss & Madison, APC
330 Marshall Street, Suite 1000
Shreveport, Louisiana 71101
Attention: R. Joseph Naus

RE: **Pre-Negotiation Letter Agreement:** Negotiating class treatment for the undersigned members of the ad hoc group of abuse survivors (together with any other person who may become a member of the ad hoc group, the "**Ad Hoc Group**") and entering into a Restructuring Support Agreement (the "**RSA**") with the Diocese of Alexandria, a Louisiana non-profit corporation (the "**Diocese**").

Dear Ad Hoc Group:

The Ad Hoc Group represents a group of plaintiffs with claims of alleged sexual abuse (the "**Claims**") against the Diocese and/or certain clergy members in the Diocese. The Claims have not been fully litigated and no judgments have been entered with respect thereto. The Parties (as defined below) desire to conduct the Negotiations (as defined below) with the purpose of avoiding litigation cost and expense and ensuring an equitable resolution of the Claims for each of the members of the Ad Hoc Group. The Ad Hoc Group desires to be treated as a class, rather than as individuals, for the purpose of this Agreement to ensure certain members are not treated more beneficially than others because such members prosecuted or settled his or her Claims first.

In order to ensure that discussions and negotiations among some or all of the members Ad Hoc Group and the Diocese (individually, a "**Party**" and collectively, the "**Parties**") and their affiliates and authorized representatives, with respect to the status of the Ad Hoc Group's class treatment and the execution of the RSA will be as open and productive as possible, we want to confirm our mutual understanding that all past discussions and negotiations, as well as all subsequent discussions and negotiations, have been and will be undertaken with a view toward compromise and settlement. Please execute a copy of this Pre-Negotiation Letter Agreement ("**Agreement**") to indicate your agreement to be bound by the terms hereof and return it to the undersigned. The effective date of this Agreement shall be April 1, 2025 (the "**Effective Date**"):

1. **Negotiations**. The Parties agree that any and all prior and subsequent (through the Termination Date) discussions, negotiations, correspondence, communications, meetings among the Parties (including through virtual applications), statements, drafts of documents (including, without limitation, unexecuted drafts of this document), and any financial information or projections concerning the Diocese shared between the Parties before the Termination Date in relation to negotiating possible class treatment for the undersigned members of the Ad Hoc Group and entering into a Restructuring Support Agreement (collectively with any prior discussions, the "**Negotiations**") shall be considered compromise and settlement negotiations and propositions made with a view to a compromise and settlement, and that all such Negotiations shall be protected accordingly and shall not be discoverable or admissible as evidence on any issue that may be before any court, arbitrator, or other tribunal. However, (from here to the end of this paragraph shall be known as the "**Negotiations Limitation**") after the Termination Date, nothing in this definition of Negotiations or any other provision of this Agreement shall be construed to limit the obtaining, by any lawful means, including but not limited to any lawful discovery, of any information, data, documents or material that existed prior to the Effective Date of this Agreement or which was created after the Termination Date, and which was not created solely for the purposes of facilitating settlement discussions related to this Agreement between the Parties, even if some of this information, data, documents or material was incorporated into or referenced in Negotiations, and any information, data, documents or material so obtained may be used in any lawful manner before any court, arbitrator, or other tribunal. Per the foregoing, for the avoidance of doubt, just because information, data, documents or material that existed prior to the Effective Date and which would otherwise be discoverable is referenced or incorporated in communications or documents created for the Negotiations, does not mean that it cannot later be the subject of discovery request if settlement discussions do not successfully lead to mutually agreeable settlement terms; the Negotiations incorporating such data remain undiscoverable and inadmissible as settlement communications, but the incorporated data, in its standalone form, remains subject to discovery and use in any adjudication or proceeding. Of course, similarly, nothing in the definition of Negotiations or any other provision of this Agreement shall be construed to limit the right of any person, entity or group which is made subject to any such post-Termination Date discovery request for information, data, documents, etc., to raise any and all lawful objections or legal defenses, other than those based on the provisions of this Agreement, in opposition to any such efforts to obtain such information, documents, or data. Moreover, without limiting the foregoing, for the avoidance of doubt, nothing in this paragraph should be construed to have any effect, either positively or negatively, on the admissibility, in any proceeding, of information, data, documents or material already obtained by either the Diocese or any member of the Ad Hoc Group prior to the Effective Date through lawful discovery in any proceeding pending between the Diocese and any member or members of the Ad Hoc Group prior to the Effective Date.

2. **Confidentiality**. Reference is hereby made to that certain Confidentiality Agreement entered into between the attorneys of the Ad Hoc Group and the attorneys of the Diocese (the "**Confidentiality Agreement**"). Each of the Parties hereby acknowledges and agrees that the Negotiations are confidential in nature and that such Negotiations are subject in all respects to the Confidentiality Agreement.

3. **Stay of Prosecution**. From the Effective Date through the Termination Date (as defined below), the attorneys/members of the Ad Hoc Group shall exercise all good faith, practicable efforts to temporarily stay prosecution of all currently pending Claims against the Diocese and shall not file suit against the Diocese on account of any new Claims unless necessary to prevent the applicable prescriptive period or statute of limitations from barring any such new Claims; provided, however, that prosecution of any such

new Claims shall be immediately stayed by the members of the Ad Hoc Group after the filing and service of the petition or complaint until the Termination Date. Similarly, the Diocese agrees to exercise all good faith, practicable efforts to temporarily stay active litigation conducted on its behalf in such proceedings from the Effective Date through the Termination Date. Provided, however, that nothing in this paragraph shall prevent any attorneys representing parties to lawsuits or other proceedings from responding to requests from the presiding tribunal or adjudicative officer for reports on status of the case or for other information or to otherwise comply with orders which do not require prosecution of any pending matters. Furthermore, to the extent any scheduling order or other order setting deadlines has been entered in a case, mediation or other proceeding implicated by this paragraph, or there are other deadlines under relevant rules or law in such as case, mediation or other proceeding, at the request of any member of the Ad Hoc Group in such a case, or at the request of the Diocese, such parties will work together in that case or mediation, in good faith, to jointly seek the extension of any deadlines to allow the parties to meaningfully engage in the Negotiations.

4. **Group Counsel Fees**.  Subject to the provisions of Section 9 of this Agreement, the Diocese shall be responsible for the reasonable and documented fees and expenses ("**Legal Fees**") of the Ad Hoc Group's counsel: Wiener, Weiss & Madison, APC of Shreveport, Louisiana ("**Group Counsel**"). Notwithstanding anything to the contrary in this Agreement, this Agreement shall not constitute any attorney-client relationship between Group Counsel and the Diocese and shall not constitute a waiver of the attorney-client privilege between Group Counsel and the Ad Hoc Group.  Notwithstanding the foregoing, the Diocese shall only be responsible for such fees and costs as follows:

   a.  The Diocese shall, on the Effective Date, pay to Group Counsel a $50,000.00 retainer (the "**Retainer**"). The Retainer may be applied by Group Counsel to the Legal Fees: (A) for Group Counsel's time and expenses on or in connection with this matter before this Agreement was signed in an amount not more than $15,000 (B) to the extent that the Diocese does not timely pay monthly Legal Fees as set forth in section 4(b) below, and (C) upon the effectiveness of the RSA, at the option of the Diocese, may be applied by Group Counsel to any remaining outstanding Legal Fees.

   b.  The Diocese will pay up to $30,000 per month of Legal Fees. Group Counsel shall provide the Diocese with a redacted invoice by email to the Diocese and counsel to the diocese at the email addresses provided below in Section 11 for the Legal Fees each month during the term of this Agreement, and the Diocese shall pay the invoice within thirty (30) days of receipt of each such invoice. If the Diocese does not pay any invoice within thirty (30) calendar days of receipt or Group Counsel has reason to believe that a bankruptcy filing by or against the Diocese is imminent, then Group Counsel is authorized to use the Retainer to pay the invoice.

5. **Financial Advisor**. To the extent Ad Hoc Group has hired or hires a third-party financial advisor ("**Advisor**"), and subject to the terms of Section 9 hereof, the Diocese agrees to pay the Advisor up to $15,000.00 per month within thirty (30) calendar days of receipt of Advisor's invoice for Advisor's services in reviewing the Diocese's financial data in connection with the Negotiations. All such data provided to the Advisor shall constitute part of the Negotiations and be subject to this Agreement.

6. **Joinder of New Members**.  If any person not then a member of the Ad Hoc Group or represented by counsel representing the Ad Hoc Group brings a Claim against the Diocese after the Effective Date, the Diocese shall send notice of the same to the Ad Hoc Group, and the Ad Hoc Group shall thereafter use

reasonable efforts to cause such persons and/or counsel to join the Ad Hoc Group and agree to the terms and conditions of this Agreement and the Confidentiality Agreement.

7. **Mediation**. To the extent the Parties mediate, such mediations shall be conducted by John W. Perry, Jr. of Baton Rouge, Louisiana, or any other person mutually agreeable to the Diocese and 51% of the then-members of the Ad Hoc Group (the "**Mediator**"). The Diocese agrees to pay 100% of the Mediator's reasonable and documented fees and expenses with respect to such mediations.

8. **Information Requests**. The Ad Hoc Group may reasonably request information and documentation from the Diocese that is necessary for the Ad Hoc Group to evaluate proposals made by the Diocese and to prepare for mediation. The Diocese shall provide reasonable responses to the information and documentation requested by the Ad Hoc Group within a reasonable amount of time after receipt of any such request. Notwithstanding the foregoing, the Diocese shall not be required to (a) provide or produce information not within the custody of the Diocese or (b) create documents at the Ad Hoc Group's request. During the term of this Agreement, the Parties agree that neither Party shall be entitled to the deposition of the other Party (including any members, officers, officials, or other employees or representatives thereof). For the avoidance of doubt, the information requests described in this Section 8 are not intended to be, and the Parties agree that such information requests are not, formal discovery nor are such information requests to be governed by any of the rules of evidence (whether of Louisiana, the United States of America, or any other jurisdiction) applicable to discovery requests and production except as set forth in Section 10 hereof.

9. **Termination; RSA to Supersede; Withdrawal**

   a. Either Party may terminate this Agreement upon 21-days' written notice to the other Party. Termination by the Ad Hoc Group shall require the affirmative vote of 51% of the then-members of the Ad Hoc Group. This Agreement shall terminate on the date that is 21 days after the date such written notice is received. During the period starting on the date such written notice is received by the non-terminating Party through and including the Termination Date (as defined below), the Diocese will continue to be responsible for and pay the Legal Fees and the fees of the Advisor (if any), but shall have no responsibility for any Legal Fees or Advisor fees incurred after the Termination Date.

   b. If the Parties enter into a Restructuring Support Agreement after the Effective Date and the Parties agree that the Restructuring Support Agreement has been executed by 85% or more of the then-known claimants against the Diocese, on the date the Parties agree in writing that that milestone has been reached, such Restructuring Support Agreement shall supersede this Agreement and this Agreement shall terminate.

   c. If the Parties do not enter into a Restructuring Support Agreement and the Diocese files a petition for relief under the United States Bankruptcy Code, this Agreement shall terminate upon the filing of the petition.

   d. Similar to subsection 9(a), under subsections 9(b) and 9(c), the Diocese will continue to be responsible for and pay the Legal Fees and the fees of the Advisor (if any) incurred on or before the effective date of the terminations described in those subsections.

   e. The date termination is effective under any of the 9(a), 9(b), or 9(c) is the "Termination Date."

f. Any individual member of/attorney in the Ad Hoc Group reserves the right to withdraw from the Ad Hoc Group upon seven (7) calendar days' written notice to the Diocese and to the Ad Hoc Group, which withdrawal shall not, on its own, terminate this agreement as between the Diocese and the remaining members of the Ad Hoc Group. Such withdrawal will have no impact on the Diocese' obligations, responsibilities and or agreements to pay Legal Fees and Advisor fees (if any). For the avoidance of doubt, and without limiting the foregoing, such a withdrawal, once effective after the seven (7) days' notice, will end any obligation of the withdrawn/former member of the Ad Hoc Group to stay prosecution under paragraph 3 herein, and, reciprocally, will end the obligation of the Diocese to stay active litigation under paragraph 3 as to (and only as to) the withdrawn/former member of the Ad Hoc Group, and, discovery between the Diocese and the withdrawn/former member of the Ad Hoc Group may proceed in accord with any applicable rules or laws outside of this Agreement.

g. Notwithstanding termination or withdrawal under any of the foregoing, this Agreement shall remain effective to the extent necessary for Group Counsel to retain any and all rights under the Agreement to and related to the Retainer, including but not limited to the right to use all or any portion the Retainer to pay any unpaid Legal Fees owed to Group Counsel for legal services rendered prior to the Termination Date.

10. **Inadmissible Evidence**. The Negotiations are without prejudice and are not intended to be used in a court of law or in any related forum; provided, however, that nothing herein shall prevent any Party from relying on, introducing into evidence or enforcing the terms of this Agreement. In such an instance, the Parties agree that, except for the Diocese's signature page and the signature page of Group Counsel, all signature pages attached to this Agreement and any joinder shall be redacted to the extent this Agreement is filed in any proceeding. All evidence of conduct and communications of any nature whatsoever (whether written or oral, or express or implied) of any of the Parties that constitute Negotiations as defined by this Agreement, or in any meetings or correspondence relating to possible settlement or compromise of the Claims shall be inadmissible for any purpose whatsoever in any judicial or similar proceeding, or forum related thereto. The foregoing sentence is intended to be broader than the restrictions on admissibility contained in the applicable state law's Rules of Evidence and in Rule 408 of the Federal Rules of Evidence (and similar rules or doctrines of other jurisdictions). Furthermore, such, Negotiations shall not be used in any litigation to indicate culpability, weakness of position, admission of liability or admission of any obligations due and owing to or from any Party hereto. Nothing in this Agreement, however, shall eliminate or limit in any way whatsoever the rights of any Party to this Agreement in connection with any bankruptcy case filed by the Diocese under the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of any court, or any other applicable law. However, notwithstanding anything in this paragraph to the contrary, nothing in this paragraph shall be construed to limit or modify the Negotiations Limitation previously stated above, in paragraph 1, which is incorporated herein in full.

11. **Notices**. Notices under this Agreement to any Party shall be in writing and shall be transmitted using one of the following methods, at the sender's sole discretion: either (a) personally, (b) by U.S. certified mail return receipt requested, (c) by nationally-recognized overnight delivery service (such as FedEx or UPS), or (d) email; and any of the foregoing should be addressed to the relevant Party using the postal addresses and or email addresses (as relevant) set forth below or to an alternative postal address or email address if a Party has sent notice under this paragraph to the other Party notifying them in writing of the change of postal and or email address. Any communication hereunder will be deemed given and effective (a) when

actually received, in the case of hand delivery, (b) the next business day (*i.e.*, any day that is not a Saturday, Sunday, or legal holiday in the state of Louisiana) in the case of an overnight delivery service, (c) five (5) business days in the case of certified mail return receipt requested, and (d) on the date sent by email if sent before 5:00 pm local time of the recipient, and on the next business day if sent at or after 5:00 pm local time of the recipient, provided in such case that such sent email is kept on file (whether electronically or otherwise) by the sender and the sender does not receive a genuine automatically generated message from the recipient's email server that such email could not be delivered.

If to the Ad Hoc Group:

c/o Wiener, Weiss & Madison, A.P.C.
330 Marshall Street, Suite 1000
Shreveport, Louisiana 71101
Attn: R. Joseph Naus
Email:  rjnaus@wwmlaw.com

        *and*

c/o Wiener, Weiss & Madison, A.P.C.
445 Louisiana Avenue
Baton Rouge, Louisiana 70802
Attn: Patrick L. McCune
Email: pmccune@wwmlaw.com

If to Diocese:

Diocese of Alexandria:
4400 Coliseum Blvd.
Alexandria, LA 71303
Attn: David Brook
Email: dbrook@diocesealex.org

With a copy to (which shall not constitute notice):

Gold Weems Bruser Sues & Rundell, APLC
2001 MacArthur Dr.
Alexandria, LA 71301
Attn: Brad Drell
Email:  bdrell@goldweems.com

        *and*

Husch Blackwell LLP
4801 Main St., Ste. 1000
Kansas City, MO 64112
Attn: Mark Benedict
Email:  Mark.Benedict@huschblackwell.com

12. **Miscellaneous**.  This Agreement and the Confidentiality Agreement constitutes the entire agreement between the undersigned Parties concerning the Negotiations and supersedes all prior or contemporaneous representations or agreements not expressed herein. This Agreement shall inure to the benefit of and is binding upon the Parties and their respective heirs, successors and assigns. All Negotiations shall be governed by and subject to the terms of this Agreement. The terms of this Agreement may not be changed, waived, or modified orally, but only by an instrument or instruments in writing, signed by the Party against which enforcement of the change, waiver, or modification is asserted. Each Party executing this Agreement represents that such Party has the full authority to do so. This Agreement may only be amended by a writing which specifically states that it amends this Agreement and is duly executed by all of the Parties. Memoranda of meetings, summaries of proposed terms and notes of preliminary understandings shall have no effect whatsoever and shall not be binding on the Parties. Each Party signing below understands that this is a legally binding contract that affects such Party's rights. Each Party signing below represents to each of the other Parties that such Party has consulted with its own legal counsel with respect to the meaning of this Agreement, and that such Party is familiar with and understands the terms and provisions of this Agreement. Any title provided for a numbered paragraph is for convenience only and does not modify the meaning of the paragraph that follows such title.

13. **Governing Law; Jurisdiction; Venue**. This Agreement shall be governed by the laws of the State of Louisiana, without regard to conflicts of laws principles. Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, against the other Party in any way relating to this Agreement, in any forum other than the courts of the State of Louisiana sitting in Rapides Parish or any of the Courts of the United States in the Western District of Louisiana, including the United States District Court for the Western District of Louisiana and the United States Bankruptcy Court for the Western District of Louisiana, and any appellate court from any thereof, and each of the Parties irrevocably and unconditionally submits to the jurisdiction of such courts and agrees that any such action, litigation, or proceeding may be brought in any such Louisiana state court or, to the fullest extent permitted by applicable law, in such federal court. Each Party irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement in any such court referred to in this Section. Each of the Parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

14. **Reservation of Rights**. Notwithstanding this Agreement or the provisions hereof, each of the Parties hereby expressly reserve all rights and remedies with respect to the Claims, including, but not limited to, any counterclaims related thereto and this Agreement shall not be construed to prejudice or otherwise impair any such rights and remedies, except as expressly provided herein.

15. **Counterparts**.  This Agreement may be executed in one or more counterparts or counterpart signature pages attached to one copy of this Agreement, each of which shall constitute an original and all of which taken together shall constitute one agreement. Documents executed, scanned (in PDF or similar reprographic format), and/or executed (and, as appropriate, witnessed and/or notarized) electronically using electronic signature software (e.g., DocuSign or similar software), or similar methods (each a method of "**Electronic Execution**") and transmitted electronically shall be deemed original signatures for purposes of this Agreement and all matters related thereto, with such Electronic Execution having the same legal and binding effect as original signatures.  The Parties agree that this Agreement may be

accepted, executed or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act (E-Sign Act), Title 15, United States Code, Sections 7001 et seq., the Uniform Electronic Transaction Act (UETA) and any applicable state law. Any document accepted, executed or agreed to in conformity with such laws will be binding on all Parties the same as if it were physically executed and the Parties hereby consent to the use of any third-party electronic signature capture service providers as may be chosen by the Diocese. The Parties (a) consent to the Electronic Execution of the Agreement and the use of electronic signatures, (b) intend to be bound by the signatures on any document delivered via Electronic Execution; (c) are aware that the other party will rely on such Electronic Execution and electronic signatures; and (d) waive any defenses to the enforcement of the terms of this Agreement based on Electronic Execution or electronic signatures.

Very truly yours,

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

/s/Bradley L. Drell
Bradley L. Drell for
**DIOCESE OF ALEXANDRIA**,
a Louisiana non-profit corporation

**[Signatures Continued on Following Pages]**

**ACKNOWLEDGED AND AGREED TO:**

Date: _April 17, 2025_

**WIENER, WEISS, & MADISON, A.P.C.**

Patrick L. McCune, La. Bar No. 31863
445 Louisiana Avenue
Baton Rouge, Louisiana 70802
Telephone: (225) 910-8084
Email: pmccune@wwmlaw.com

*Counsel for the Ad Hoc Group*

Date: _April 17, 2025_

**WIENER, WEISS, & MADISON, A.P.C.**

R. Joseph Naus, La. Bar No. 17074
P.O. Box 21990
Shreveport, Louisiana 71120-1990
Telephone: (318) 226-9100
Email: rjnaus@wwmlaw.com

*Counsel for the Ad Hoc Group*

**[Signatures Continued on Following Pages]**

**This page shall serve as the form for signatures of the members of the Ad Hoc Group.**

**It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.**

**ACKNOWLEDGED AND AGREED TO:**

**<u>AD HOC GROUP MEMBER</u>:**

Date: _____

Signature: _____

Printed name: _____

Title or Firm: _____

Address: _____

_____

Phone: _____

Email: _____

This page shall serve as the form for signatures of the members of the Ad Hoc Group.

It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.

**ACKNOWLEDGED AND AGREED TO:**

<u>**AD HOC GROUP MEMBER:**</u>



**This page shall serve as the form for signatures of the members of the Ad Hoc Group.**

**It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.**

**ACKNOWLEDGED AND AGREED TO:**

**AD HOC GROUP MEMBER:**



**This page shall serve as the form for signatures of the members of the Ad Hoc Group.**

**It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.**

**ACKNOWLEDGED AND AGREED TO:**

**AD HOC GROUP MEMBER:**



This page shall serve as the form for signatures of the members of the Ad Hoc Group.

It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.

ACKNOWLEDGED AND AGREED TO:

AD HOC GROUP MEMBER:



This page shall serve as the form for signatures of the members of the Ad Hoc Group.

It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.

**ACKNOWLEDGED AND AGREED TO:**

**AD HOC GROUP MEMBER:**



This page shall serve as the form for signatures of the members of the Ad Hoc Group.

It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.

**ACKNOWLEDGED AND AGREED TO:**

**AD HOC GROUP MEMBER:**



**This page shall serve as the form for signatures of the members of the Ad Hoc Group.**

**It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.**

**ACKNOWLEDGED AND AGREED TO:**

**<u>AD HOC GROUP MEMBER</u>:**



**This page shall serve as the form for signatures of the members of the Ad Hoc Group.**

**It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.**

**ACKNOWLEDGED AND AGREED TO:**

**<u>AD HOC GROUP MEMBER:</u>**



This page shall serve as the form for signatures of the members of the Ad Hoc Group.

It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.

**ACKNOWLEDGED AND AGREED TO:**

**AD HOC GROUP MEMBER:**



This page shall serve as the form for signatures of the members of the Ad Hoc Group.

It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.

ACKNOWLEDGED AND AGREED TO:

**AD HOC GROUP MEMBER:**



**This page shall serve as the form for signatures of the members of the Ad Hoc Group.**

**It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.**

**ACKNOWLEDGED AND AGREED TO:**

**AD HOC GROUP MEMBER:**



This page shall serve as the form for signatures of the members of the Ad Hoc Group.

It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.

**ACKNOWLEDGED AND AGREED TO:**

**AD HOC GROUP MEMBER:**



**This page shall serve as the form for signatures of the members of the Ad Hoc Group.**

**It may be duplicated as many times as necessary for additional members of the Ad Hoc Group to use as their signature page for the Pre-Negotiation Letter Agreement between the Diocese of Alexandria and the Ad Hoc Group.**

**ACKNOWLEDGED AND AGREED TO:**

**AD HOC GROUP MEMBER:**

