# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

IN RE:                                                          CASE NO. 25-31257

**DIOCESE OF ALEXANDRIA**

**DEBTOR**[1]                                                  **CHAPTER 11**

---

## DEBTOR'S MOTION FOR AN ORDER
## ESTABLISHING DEADLINES FOR FILING
## PROOFS OF CLAIM AND GRANTING RELATED RELIEF

The **Diocese of Alexandria** (the "Debtor" or "Diocese"), as debtor-in-possession, through the undersigned counsel files this motion (the "Bar Date Motion" or "Motion") pursuant to sections 105(a), 107, 501, 502 and 503 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 2002(a), 3003(c)(3), and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule of Bankruptcy Procedure 3003-1 in the United States Bankruptcy Court for the Western District of Louisiana ("LBR"). The Debtor seeks entry of an order substantially in the form attached hereto as Exhibit A (the "Order"). In support of this Motion, the Debtor relies on the *Declaration of Deacon Richard Mitchell Regarding the Debtor's History, Charitable Mission, and Purpose in Seeking Chapter 11 Relief* (the "Mitchell Declaration") and the *Declaration of David Brook in Support of First Day Motions* (the "Brook Declaration," together with the Mitchell Declaration, the "First Day Declarations"), which are incorporated by reference, and show as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1] The Debtor's address is 4400 Coliseum Blvd, Alexandria, LA 71303. The last four digits of the Debtor's taxpayer identification number are 1102.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a), 107, 501, 502 and 503 of the Bankruptcy Code, Bankruptcy Rules 2002(a), 3003(c)(3), 9018 and LBR 3003-1.

## BACKGROUND

4.      On **October 31, 2025** (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

5.      On November 21, 2025, the U.S. Trustee appointed a Committee.

6.      With the filing of the petition, Debtor filed the First Day Declarations. Please refer to the First Day Declarations for a summary of the Debtor in the above-referenced Chapter 11 Case, including an overview of the Debtor's history, mission, ministries, financial position, the circumstances giving rise to the commencement of the Chapter 11 Case, and an overview of the relief requested in the first day pleadings.

7.      The Debtor's Chapter 11 Case was filed to reorganize its financial affairs pursuant to a plan of reorganization that will, among other things, fairly, justly and equitably resolve allowed claims[2] held by Putative Abuse Survivors (defined below) and other creditors, in a manner consistent with the Bankruptcy Code.

8.      The establishment of a deadline to file claims is critical in this case because it will allow the Debtor and other necessary parties to understand the universe of claims asserted against the Debtor. Many of the unsecured creditors in this case are individuals who allege that

---

[2] As used herein, the term "claim" means any claim, as defined in Section 101(5) of the Bankruptcy Code, against the Debtor.

25-31257 - #203  File 12/29/25  Enter 12/29/25 18:21:57  Main Document  Pg 2 of 23

the Diocese, or persons affiliated with the Diocese, is liable for his or her injuries arising from abuse (the "Putative Abuse Survivors"). Such Putative Abuse Survivor Claims may not be reflected on the Debtor's books and records, and thus a notice process designed to give appropriate notice to potential claimants, coupled with a deadline to file claims, will allow the Debtor, and other parties in interest to review claims and then proceed with negotiations with the objective of settling the Putative Abuse Survivor Claims and confirming a plan of reorganization.

9.     Putative Abuse Survivor Claims typically require disclosure of information beyond the scope of the standard proof of claims form. As such, the Debtor proposes a Putative Abuse Survivor Claim Form (defined below and attached hereto as <u>Exhibit C</u>) that requests information necessary to evaluate Putative Abuse Survivor Claims.

10.     The Debtor also acknowledges the critical importance of maintaining the confidentiality of both the Putative Abuse Survivors and those accused of abuse (the "Accused Individuals").[3] By separate motion, the Debtor sought entry of an order establishing procedures to protect the identities of these individuals by safeguarding not only personally identifiable information, but also any information that could reasonably be used to identify a Putative Abuse Survivor, an Accused Individual, current or former employees, workers' compensation claimants, or minors (the "Protected Information").[4] *See* Dkt. No. 13.  As set forth in the *Interim Order Approving Debtor's Expedited Motion for an Order Authorizing and Approving Special Noticing and Confidentiality Procedures* (the "Confidentiality Protocol Order") [Dkt. No. 93], the Protected Information, which includes claims submitted by Putative Abuse Survivors and

---

[3] Accused Individuals whose identities will be subject to the confidentiality protocol do __not__ include those listed in the Names of Clergy accused, which may be accessed at https://www.diocesealex.org/diocese-releases-names-of-clergy/, and which may be supplemented from time to time.

[4] As used herein, the term "personally identifiable information," shall have the same meaning ascribed to it in 11 U.S.C. § 101(41A). For the avoidance of doubt, however, "Protected Information" is not limited to personally identifiable information; it includes any information sufficient to identify a Putative Abuse Survivor, an Accused Individual, current or former employees, workers' compensation claimants, or minors.

pleadings containing Protected Information related to such claims, is subject to specific confidentiality protocols.

## RELIEF REQUESTED

11.     By this Motion, the Debtor hereby seeks the entry of an order (the "Bar Date Order") substantially in the form attached hereto as <u>Exhibit A</u>:

      a.   establishing the general bar date (the "General Bar Date") by which all entities,[5] except governmental units, must file proofs of claim in this Chapter 11 Case asserting a claim against the Debtor that arose prior to the Petition Date, including any claims asserting administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code (any such claim, "Section 503(b)(9) Claim") that arose prior to the Petition Date;

      b.   establishing the date by which governmental units must file proofs of claim in this Chapter 11 Case (the "Governmental Unit Bar Date" and collectively with the General Bar Date, the "Bar Dates");

      c.   confirming the applicability of the Confidentiality Protocol Order to any Putative Abuse Survivor Claims filed in this Chapter 11 Case;

      d.   approving the form and manner of notice of the Bar Dates to be delivered to claimants in this Chapter 11 Case;

      e.   approving the proof of claim forms to be used in this Chapter 11 Case; and

      f.   granting related relief.

## BASIS FOR RELIEF

12.     For the Debtor to make distributions to claimants in this Chapter 11 Case (including pursuant to any plan confirmed pursuant to section 1129 of the Bankruptcy Code), the Debtor requires, among other things, complete and accurate information regarding the nature, validity, and amount of claims that will be asserted herein.

13.     Establishing the Bar Dates pursuant to Bankruptcy Rule 3003(c)(3) and related procedures will contribute to the Debtor's ability to advance discussions with all stakeholders in

---

[5] As used herein, the term "entity" has the meaning given to such term in section 101(15) of the Bankruptcy Code.

4

this Chapter 11 Case. Setting a bar date is a critical condition precedent to identifying the universe of claims asserted against the Debtor. In particular, the amount of such claims—and other details, such as when such claims allege that abuse occurred—will be critical in advancing discussions with key stakeholders. The Debtor filed its schedules and statement of financial affairs early in the Chapter 11 Case to further contribute to this goal.

## ESTABLISHMENT OF THE BAR DATES

**A.      Establishment of the Bar Dates.**

14.      <u>The General Bar Date</u>. Bankruptcy Rule 3003(c)(3) requires that the Court fix a time within which proofs of claim must be filed. Fed. R. Bankr. P. 3003(c)(3) ("The court must set the time to file a proof of claim or interest."). "Where no bar date has otherwise been specifically set by the court, a creditor or equity security holder … must file a proof of claim within ninety (90) days after the first date set for the meeting of creditors pursuant to 11 U.S.C. § 341…." LBR 3003-1. Additionally, Bankruptcy Rule 2002(a) requires that parties in interest receive at least 21 days' notice of the "time fixed for filing proofs of claim pursuant to Rule 3003(c)." Fed. R. Bankr. P. 2002(a)(7).

15.      The Debtor requests that the Court establish May 6, 2026, as the General Bar Date. The General Bar Date will apply to all entities, other than governmental units, holding claims of any kind that arose prior to the Petition Date, whether secured, unsecured priority (including Section 503(b)(9) Claims), or unsecured nonpriority claims. While the Debtor proposes a different proof of claim form and different notice procedures for holders of alleged Putative Abuse Survivor Claims, to avoid confusion, the Debtor requests the General Bar Date apply to the submission of Putative Abuse Survivor Claims as well.

5

16. The Debtor anticipates that the General Bar Date will provide approximately ninety (90) days for creditors to file proofs of claim, which aligns with the default period of ninety (90) days following the meeting of creditors.

17. Putative Abuse Survivors will receive approximately 90 days' notice to file their Claims from the date the Bar Date Packages (as defined below) are sent via certified mail. This notice period is comparable to the average notice period of approximately 92 days provided in diocesan cases filed since 2020.[6] *See, e.g.*, *In re Roman Catholic Bishop of Fresno*, Case No. 25-12231 (Bankr. E.D. Cal. Nov. 17, 2025) [Dkt. No. 420] (67 days' notice); *In re Roman Catholic Diocese of Burlington, Vermont*, Case No. 24-10205-HZC (Bankr. D. Vt. Dec. 30, 2024) [Dkt. No. 144] (87 days' notice); *In re The Roman Catholic Bishop of San Diego*, Case No. 24-02202 (Banrk. S.D. Cal. Nov. 14, 2024) [Dkt. No. 292] (66 days' notice); *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326 (Bankr. E.D. Cal. July 16, 2024) [Dkt. No. 507] (63 days' notice); *In re Franciscan Friars of California, Inc.*, Case No. 23-41723 (Bankr. N.D. Cal. May 21, 2024) [Dkt. No. 280] (93 days' notice); *In re The Roman Catholic Archbishop of Baltimore*, Case No. 23-16969 (Bankr. D. Md. Jan. 16, 2024) [Dkt. No. 316] (129 days' notice); *In re The Roman Catholic Archbishop of San Francisco*, Case No. 23-30564 (Bankr. N.D. Cal. Nov. 21, 2023) [Dkt. No. 337] (76 days' notice); *In re The Roman Catholic Diocese of Ogdensburg*, New York, Case No. 23-60507 (Bankr. N.D. N.Y. Oct. 19, 2023) [Dkt. No. 203] (77 days' notice); *In re The Roman Catholic Bishop of Oakland, a California corporation sole*, Case No. 23-40523 (Bankr. N.D. Cal. July 25, 2023) [Dkt. No. 293] (41 days' notice); *In re The Roman Catholic Diocese of Albany, New York*, Case No. 23-10244 (Bankr. N.D. N.Y. Aug. 29, 2023) [Dkt. No. 447] (49 days' notice); *In re The Roman Catholic Bishop of Santa Rosa*, Case

---

[6] This calculation does not include certain New York diocesan cases, which are outliers due to the impact of New York's Adult Survivors Act ("ASA"). The ASA resulted in supplemental bar date deadlines specifically applicable to claims affected by the statute.

No. 23-10113 (Bankr. N.D. Cal. July 25, 2023) [Dkt. No. 327] (73 days' notice); *In re The Norwich Roman Catholic Diocesan Corporation*, Case No. 21-20687 (Bankr. D. Conn. Nov. 19, 2021) [Dkt. No. 386] (109 days' notice); *In re The Diocese of Camden, New Jersey*, Case No. 20-21257 (Bankr. D. N.J. Feb. 11, 2021) [Dkt. No. 409] (124 days' notice); *In re The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D. La. Oct. 1, 2020) [Dkt. No. 461] (137 days' notice); *In re Roman Catholic Diocese of Harrisburg*, Case No. 20-00599 (Bankr. M.D. Pa. May 6, 2020) [Dkt. No. 291] (184 days' notice). Accordingly, the proposed Putative Abuse Survivor Date is reasonable.

18. <u>Governmental Unit Bar Date</u>. Pursuant to section 502(b)(9) of the Bankruptcy Code, a proof of claim filed by a governmental unit in this Chapter 11 Case is deemed timely if it is filed within 180 days after the Petition Date, or by April 29, 2026.[7] The Debtor therefore requests that this Court establish April 29, 2026, as the Governmental Unit Bar Date in this Chapter 11 Case. The Governmental Unit Bar Date would apply to all governmental units holding claims against the Debtor (whether secured, unsecured priority, or unsecured nonpriority) that arose prior to the Petition Date, including governmental units with claims against the Debtor for unpaid taxes, whether such claims arise from prepetition tax years or periods or prepetition transactions to which the Debtor were a party.

## **WHO MUST FILE PROOFS OF CLAIM**

**A.      Entities That Must File Proofs of Claim by the applicable Bar Date.**

19. Unless they fall within one of the exceptions described in Section B below, all entities must file proofs of claim by the applicable Bar Date.

---

[7] As used in this Motion, the term "governmental unit" has the meaning given to it in section 101(27) of the Bankruptcy Code. Under Bankruptcy Rule 3002(c)(1), "[a] proof of claim filed by a governmental unit … is timely filed if it is filed not later than 180 days after the date of the order for relief."

20.     Specifically, the Debtor proposes that the following entities be required to file proofs of claim on or before the applicable Bar Date:

a.  any entity (i) whose prepetition claim (including any 503(b)(9) Claims) against the Debtor is not listed in the Debtor's Schedules or is listed as disputed, contingent, or unliquidated and (ii) that desires to share in any distributions in this Chapter 11 Case;

b.  any entity that believes that its prepetition claim is improperly classified in the Schedules or is listed in an incorrect amount and that desires to have its claim allowed in a classification or amount different from the classification or amount identified in the Schedules; and

c.  any Putative Abuse Survivor who believes that he or she has a claim against the Debtor, including but not limited to, Putative Abuse Survivors who have previously filed lawsuits against the Debtor, Putative Abuse Survivors who previously gave notice to the Debtor and/or the Diocese of their abuse (including informal notice thereof), who have never filed a lawsuit, entered into a settlement or reported their abuse to the Debtor and/or the Diocese (including any parish or schools that are located within the boundary of the Diocese), or who was abused at, or by an affiliate of, a parish or school within the ecclesiastical jurisdiction of the Diocese at the time of the alleged abuse, and believes the Diocese is responsible. For the avoidance of doubt, this includes any individual who believes that the Diocese, or persons affiliated with the Diocese, is liable for his or her injuries arising from abuse that occurred prior to the Petition Date—regardless of when the alleged abuse took place, and regardless of whether the individual is a minor, incompetent, or incarcerated—must file a claim. Claims may also be filed by such individual's representatives, parents, or guardians, as applicable.

**B.      Entities Not Required to File Proofs of Claim by the Applicable Bar Date.**

21.     The Debtor proposes that the following entities need not file proofs of claim on or before the applicable Bar Date:

a.  any entity that already has filed a proof of claim against the Debtor in a form substantially similar to Official Bankruptcy Form No. 410, provided, however, that any holder of a Putative Abuse Survivor Claim who files a proof of claim on account of a Putative Abuse Survivor Claim using a form substantially similar to Official Bankruptcy Form No. 410 rather than the Putative Abuse Survivor Proof of Claim Form (defined below) may subsequently be required to complete the Putative Abuse Survivor Proof of Claim Form or otherwise answer additional questions regarding such Putative Abuse Survivor Claim, including the questions set forth in the Putative Abuse

8

Survivor Proof of Claim Form, in connection with the administration of his or her Putative Abuse Survivor Claim;

b.  any entity whose claim is listed on the Schedules filed by the Debtor, provided that (i) the claim is not scheduled as "disputed", "contingent", or "unliquidated" and (ii) the claimant does not disagree with the amount, nature and priority of the claim as set forth in the Schedules;

c.  any holder of a claim that heretofore has been allowed by Order of this Court;

d.  any entity whose claim has been paid in full by the Debtor;

e.  any holder of a claim for which specific deadlines have previously been fixed by this Court; or

f.  any officer, director, employee, or independent contractor of the Debtor who held such position as of the Petition Date and has a claim against the Debtor for indemnification, contribution, or reimbursement; provided, however, that any of the foregoing parties that wishes to assert a claim other than a claim arising from or relating to indemnification, contribution, or reimbursement will be required to file a proof of claim by the applicable Bar Date, unless another exception identified in this paragraph applies.

## **PROPOSED PROOF OF CLAIM FORMS**

22.    The Debtor proposes to use different proof of claim forms for (i) general creditors and (ii) Putative Abuse Survivors.

**A.    The General Proof of Claim Form.**

23.    The Debtor proposes that the form of proof of claim appended to this Motion as Exhibit B (the "General Proof of Claim Form") be used by all claimants to provide proof of any claims that are not Putative Abuse Survivor Claims (the "General Proof of Claim"). The General Proof of Claim Form is a modified version of the Official Bankruptcy Form 410.

**B.    Putative Abuse Survivor Proof of Claim Form.**

24.    The Debtor proposes that the form of proof of claim appended to this Motion as Exhibit C (the "Putative Abuse Survivor Proof of Claim Form") be used by all claimants to

9

provide proof of any Putative Abuse Survivor Claims (each such completed and timely submitted form, a "Putative Abuse Survivor Proof of Claim").

25. The Debtor respectfully submits that the uniquely personal and unliquidated nature of the Putative Abuse Survivor Claims requires the collection of additional information not normally included on Official Bankruptcy Form 410 to evaluate such claims properly, and to determine whether there may be insurance coverage available to satisfy such claims, at least in part. Accordingly, the Debtor proposes that Putative Abuse Survivors utilize the Putative Abuse Survivor Proof of Claim Form which, similar to those employed in other diocesan bankruptcies, has been specifically tailored to ensure that sufficient information is collected to allow a proper assessment of such claims without being so detailed as to have any chilling effect on claimants' willingness to file claims. Because detailed information is needed to process Putative Abuse Survivor Claims, the Debtor proposes that, if a claimant submits a proof of claim asserting a Putative Abuse Survivor Claim using only the General Proof of Claim Form, on or before the applicable Bar Date, such claim will be treated as timely filed only if such claimant submits a completed Putative Abuse Survivor Proof of Claim Form within thirty (30) days following receipt of written request from the Debtor or any trustee or estate representative appointed pursuant to a confirmed plan of reorganization to complete and submit a Putative Abuse Survivor Proof of Claim Form.

26. The Debtor submits that the information requested in the Putative Abuse Survivor Proof of Claim Form is necessary and appropriate to assist the Debtor in evaluating Putative Abuse Survivor Claims.

27. The information sought is sensitive in nature, and consistent with the Confidentiality Protocol Order, the Debtor requests that the Putative Abuse Survivor Proof of

Claim Forms (and General Proof of Claim Forms that assert or appear to assert a Putative Abuse Survivor Claim) be sealed and kept confidential, and dissemination of the information therein be limited as set forth in the Confidentiality Protocol Order.

28.     The Debtor respectfully submits that the proposed Putative Abuse Survivor Proof of Claim Form and the application of the Confidentiality Protocol Order are appropriate to maintain the confidentiality of the Protected Information and to ensure that sufficient information regarding their claims can be collected.

29.     Diocesan bankruptcy cases across the country have approved forms similar to this one in connection with the assertion of abuse claims. *See, e.g., In re The Norwich Roman Catholic Diocesan Corporation*, Case No. 21-20687 (Bankr. D. Conn. Nov. 19, 2021) [Dkt. No. 386]; *In re Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345 (Bankr. S.D.N.Y. Jan. 27, 2021) [Dkt. No. 333]; *In re The Roman Catholic Diocese of Syracuse*, Case No. 20-30663 (Bankr. N.D.N.Y. Nov. 6, 2020) [Dkt. No. 214]; *In re The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D. La. Oct. 1, 2020) [Dkt. No. 461]; *In re The Diocese of St. Cloud*, Case No. 20-60337 (D. Minn. July 2, 2020) [Dkt. No. 46]; *In re The Roman Catholic Diocese of Harrisburg*, Case No. 20-00599 (Bankr. M.D. Pa. May 6, 2020) [Dkt. No. 291]; *In re The Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y., Feb. 25, 2020) [Dkt. No. 425]; *In re Roman Catholic Church of the Archdiocese of Santa Fe*, Case No. 18-13027 (Bankr. D. N.M., March 19, 2019) [Dkt. No. 130] (order entered after effective date of revised Bankruptcy Rule 9009); *In re The Diocese of Winona-Rochester*, Case No. 18-33707 (Bankr. D. Minn. Dec. 7, 2018) [Dkt. No. 51]; *In re The Diocese of New Ulm*, Case No. 17-30601 (Bankr. D. Minn. Mar. 8, 2017) [Dkt. No. 33]; *In re Roman Catholic Bishop of Great Falls, Montana*, Case No. 17-60271 (Bankr. D. Mont., June 7, 2017) [Dkt. No.

121]; *In re the Diocese of Duluth*, Case No. 15-50792 (Bankr. D. Minn. Jan. 7, 2016) [Dkt. No. 35]; *In re The Archdiocese of Saint Paul and Minneapolis*, Case No. 15-30125 (Bankr. D. Minn. Apr. 17, 2015) [Dkt. No. 188]; *In re Diocese of Helena*, Case No. 14-60074 (Bankr. D. Mont., May 6, 2014) [Dkt. No. 242]; *In re Roman Catholic Church of the Diocese of Gallup*, Case No. 13-13676 (Bankr. D. N.M., April 10, 2014) [Dkt. No. 218]; *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (Bankr. D. Del., Feb. 2, 2010) [Dkt. No. 308]; *In re Catholic Bishop of Northern Alaska*, Case No. 08-00110 (Bankr. D. Alaska, May 29, 2014) [Dkt. No. 180]; *In re Diocese of Davenport*, Case No. 06-02229 (Bankr. S.D. Iowa, Mar. 16, 2007) [Dkt. No. 97]; *In re The Archdiocese of Milwaukee*, Case No. 11-20059 (Bankr. E.D. Wis. July 14, 2011) [Dkt. No. 331]; *In re Roman Catholic Bishop of San Diego*, Case No. 07-00939 (Bankr. S.D. Cal., Aug. 20, 2007) [Dkt. No. 1061]; *In re Roman Catholic Church of the Diocese of Tucson*, Case No. 4:04-bk-04721 (Bankr. D. Ariz., Nov. 5, 2005) [Dkt. No. 118]; and *In re The Catholic Bishop of Spokane a/k/a The Catholic Diocese of Spokane*, Case No. 04-08822 (Bankr. E.D. Wa. Dec. 1, 2005) [Dkt. No. 883], as amended [Dkt. No. 1114].

30.     In addition to the aforementioned courts approving the form upon which the Putative Abuse Survivor Proof of Claim Form was based, other courts have approved similar alteration to the official proof of claim form to collect additional necessary information under appropriate circumstances. *See In re A.H. Robins Co.*, 862 F.2d 1092, 1096 (4th Cir. 1988). Further, in *A.H. Robins*, the court recognized that substantial alteration to the Official Proof of Claim Form 410 may be necessary when dealing with tort claims. *See In re A.H. Robins*, 862 F.2d at 1095.

31.     Bankruptcy Rule 9009 provides that "[t]he Official Forms prescribed by the Judicial Conference of the United States must be used without alteration—*unless alteration is*

*authorized by these rules, the form itself, or the national instructions for a particular form.*" Fed. R. Bankr. P. 9009(a) (emphasis added). However, with respect to proofs of claim, Bankruptcy Rule 3001(a) requires only that such proof of claim "must substantially conform to Form 410." Fed. R. Bankr. P. 3001(a).

32.     The Putative Abuse Survivor Proof of Claim Form proposed here, while consistent with and similar to forms approved in other diocesan cases, offers several significant improvements. First, the form is drafted in plain language, eliminating legal jargon and unnecessary repetition. This results in a shorter, more accessible document that is easier for Putative Abuse Survivors to understand and complete. Second, the form omits a predefined definition of "Abuse," empowering Putative Abuse Survivors to describe their experiences in their own terms and to self-identify how they believe they have been harmed. Third, the form is not a "check-the-box" questionnaire, nor does it suggest or lead responses. Instead, it invites each Putative Abuse Survivor to provide a detailed narrative of their experience in their own words. This approach not only respects the individuality of each Putative Abuse Survivor's account, but also enables the Debtor to gather comprehensive, accurate, and meaningful information necessary for the fair evaluation of claims.

33.     The Debtor respectfully submits that the proposed Putative Abuse Survivor Proof of Claim Form conforms substantially with Official Bankruptcy Form 410 because it requires claimants to provide the same substantive information required by the Official Form, while also soliciting additional information needed to properly assess the Putative Abuse Survivor Claims. Accordingly, the Debtor respectfully submits that this Court may authorize the use of the Putative Abuse Survivor Proof of Claim Form for the submission of Putative Abuse Survivor Claims pursuant to Bankruptcy Rule 3001(a) and its inherent equitable authority under section

105 of the Bankruptcy Code to "fashion … orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code." *Browning v. Navarro*, 887 F.2d 553, 559 (5th Cir. 1989) (quoting *United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986)).

**C.     Submission of Proof of Claim Forms.**

34.     The proposed Bar Date Order provides that, to be considered valid, each General Proof of Claim submitted in this Chapter 11 Case must: (a) be written in English, (b) be denominated in lawful currency of the United States as of the Petition Date, (c) have attached copies of any writings upon which the claim is based in accordance with Bankruptcy Rules 3001(c) and 3001(d) (including for secured claims, evidence that the security interest has been perfected) unless such writings are voluminous or confidential, in which case a summary must be attached or an explanation provided as to why such writings are not available and such writings will be provided to the Debtor upon request, (d) be signed by the creditor or, if the creditor is not an individual, by an authorized agent of the creditor or governmental unit asserting such claim; and (e) be actually received by the Debtor's claims and noticing agent, Stretto, Inc. (the "Claims Agent"), on or before the General Bar Date.

35.     The proposed Bar Date Order provides that, in order to be considered valid, each Putative Abuse Survivor Proof of Claim must: (a) be written in English or include a translation to English, (b) contain responses to all requests for information set forth therein to the best of the Putative Abuse Survivor's knowledge at the time the form is signed, (c) be signed by the Putative Abuse Survivor (or if such Putative Abuse Survivor is a minor, legally incapacitate, or deceased, by such Putative Abuse Survivor's parent, legal guardian or executor), and (d) be actually received by the Debtor's Claims Agent on or before the General Bar Date.

36.     Proofs of claim may be filed (i) electronically using the interface available on the Claims Agent's website at https://cases.stretto.com/dioceseofalexandria, or (ii) by mail, overnight courier, or hand delivery to the Claims Agent's address below:

Diocese of Alexandria Claims Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

37.     In the event that a proof of claim (whether such claim is General Proof of Claim or Putative Abuse Survivor Proof of Claim) is mailed to or personally delivered to the Clerk of the Court for the United States Bankruptcy Court for the Western District of Louisiana, the proposed Bar Date Order directs the Clerk of the Court to place such claim in a sealed envelope, mark the envelope with the date and time of the receipt, and transmit the sealed envelope to the Claims Agent at the address for receipt.

### PROCEDURES FOR PROVIDING NOTICE OF AND FILING PROOFS OF CLAIM

38.     To satisfy the requirements of due process, notice of the Bar Dates must be reasonably calculated to apprise interested persons of the deadlines. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Whether notice is reasonable or adequate depends on whether a creditor is known or unknown to the Debtor. *See Williams v. Placid Oil Co. (In re Placid Oil Co.)*, 753 F.3d 151, 154 (5th Cir. 2014); *see also Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). "Known" creditors must receive actual, mail notice of bankruptcy proceedings. 72 F.3d at 345. By contrast, notice by media publication is sufficient to satisfy the requirements of due process for "unknown" creditors. *See id*. at 346-47.

39.     A "known" creditor is one whose identity is either known or "reasonably ascertainable." 753 F.3d at 155 (citing *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 489-90 (1988)). In identifying "known" creditors, due process requires debtors to

perform reasonable diligence of their books and records – but it does not require that debtors engage in "impracticable and extended searches." *Mullane*, 339 U.S. at 317-18; *see also Louisiana Dep't of Envtl. Quality v. Crystal Oil Co. (In re Crystal Oil Co.)*, 158 F.3d 291, 297 (5th Cir. 1998) ("the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable").

40.     By contrast, the Supreme Court has held that an "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to the knowledge" of the Debtor. *Mullane*, 339 U.S. at 317. Moreover, in bankruptcy cases, when determining whether a creditor is "known" or "unknown," the appropriate form of notice, and how much to spend on notice, courts must balance the interests of the Debtor's existing and potential creditors as well as other parties in interest. *See Vancouver Women's Health Collective Soc. v. A.H. Robins Co., Inc.*, 820 F.2d 1359, 1364 (4th Cir. 1987); *see also Fogel v. Zell*, 221 F.3d 955, 963 (7th Cir. 2000); *In re Circuit City Stores, Inc.*, 439 B.R. 652, 660 (Bankr. E.D. Va. 2010) ("[t]he totality of the circumstances in each case must be analyzed to determine whether a particular creditor is known or unknown").

41.     As part of the Debtor's goal to obtain a fresh start the Debtor needs to ensure that the reorganized organization will be free from the threat of additional claims being brought after their emergence from Chapter 11. To obtain this discharge and provide any person who believes he or she has a Putative Abuse Survivor Claim or an unsecured general claim the opportunity to appear and be heard, the Debtor proposes to implement the noticing protocol set forth below.

**A.     Notice of the General Bar Date and Governmental Unit Bar Date.**

42.     **Notice of the General Bar Date and Governmental Unit Bar Date.**  Within fourteen (14) days after the entry of an order by this Court setting the Bar Dates, the Debtor shall serve by United States mail, first-class postage prepaid:

(i)      notice of the General Bar Date and the Governmental Unit Bar Date, substantially in the form attached hereto as <u>Exhibit E</u> and incorporated herein by reference (the "General Creditor Bar Date Notice"); and

(ii)     General Proof of Claim Form substantially in the form attached hereto as <u>Exhibit B</u> (together with the General Creditor Bar Date Notice, the "General Creditor Bar Date Notice Package"),

upon (a) the Office of the United States Trustee for the Western District of Louisiana; (b) counsel to the Committee; (c) all entities who have filed a notice of appearance in the Debtor's case; (d) all entities listed in Debtor's schedules; (e) all parties to executory contracts and unexpired leases of the Debtor; (f) all entities that have previously filed proofs of claims in the Debtor's case; (g) any other entities or their counsel, including governmental units, known to the Debtor as entities who may have claims against the estate; and (h) such additional entities as deemed appropriate by the Debtor.

43.     **Notice to Putative Abuse Survivors of the General Bar Date.**  Within fourteen (14) days after the entry of an order by this Court setting the Bar Dates, the Debtor shall serve by United States mail, first-class postage prepaid:

(i)      notice of the General Bar Date tailored to alleged Putative Abuse Survivors substantially in the form attached here to as <u>Exhibit D</u> (the "Putative Abuse Survivor Bar Date Notice" and, together with the General Creditor Bar Date Notice, the "Bar Date Notices");

17

(ii)     plain language notice (the "Plain Language Notice");

(iii)    Putative Abuse Survivor Proof of Claim Form; and

(iv)     the Bar Date Order without exhibits (together with the Putative Abuse Survivor Bar Date Notice, the Plain Language Notice, and the Putative Abuse Survivor Proof of Claim Form, the "Putative Abuse Survivor Bar Date Notice Package" and, together with the General Creditor Bar Date Notice Package, the "Bar Date Packages"),

upon any person listed on the portion of the Debtor's Schedule F filed under seal. If counsel for the Putative Abuse Survivor has sent the Diocese a demand, previously filed a complaint on behalf of the Putative Abuse Survivor, or entered an appearance in the Chapter 11 Case, the Putative Abuse Survivor Bar Date Notice Package shall be served solely on counsel to such person and shall **not** be served on the individual personally.

44.     Any such notice (under either Paragraph 42 or 43) that is returned as undeliverable will be re-mailed to any address indicated by the United States Postal Service in the case of an unexpired automatic forwarding order. Notices returned as non-deliverable, but for which a new address is not indicated by the USPS, will be further searched through a third-party vendor to obtain a more current address. If any such address is found, the notice will be re-mailed to such addresses.

45.     The Bar Date Notices and/or the Plain Language Notice will: (i) set forth the respective Bar Dates; (ii) advise creditors under what circumstances they must file a proof of claim in respect to a pre-petition claim; (iii) alert creditors to the consequences of failing to timely file a proof of claim, as set forth in Bankruptcy Rule 3003(c)(2) or an order of this Court, as applicable; (iv) set forth the address to which proofs of claim must be sent for filing; and (v)

notify creditors that: (a) proofs of claim must be filed with original signatures; and (b) facsimile or e-mail filings of proofs of claim are not acceptable and are not valid for any purpose.

46.     The Debtor submits the Bar Date Notices and Bar Date Packages comply with the notice period required by Bankruptcy Rules 2002(a)(7). The Debtor further submits that the manner of notice is adequate based on the notice to known creditors as well as the extensive pre-petition outreach made by attorneys representing the vast majority of Putative Abuse Survivors against the Debtor and the notice protocol described below.

**B.      Notice Protocol.**

47.     The Debtor has determined, pursuant to Bankruptcy Rule 2002(l), that it would be in the best interest of its estate to give notice by publication of the General Bar Date so that unknown Putative Abuse Survivors to whom no other notice was sent by the Debtor will be notified of the General Bar Date and the requirement to file a proof of claim. Accordingly, the Debtor proposes to provide notice of the General Bar Date to unknown Putative Abuse Survivors by causing a copy of the Plain Language Notice attached hereto as Exhibit F to be published in community/local publications for areas in proximity of the Diocese and the parishes. In addition, the Debtor will implement a social media campaign, all in accordance with the notice protocol (the "Notice Protocol") attached hereto as Exhibit H.

48.     In the Debtor's judgement, the Notice Protocol is likely to reach the widest possible audience of creditors who may not otherwise have notice of the Debtor's case.

49.     For example, the Notice Protocol includes targeted digital media notices (the "Targeted Digital Medial Notices"), attached hereto as Exhibit G, disseminated through Google and Facebook to reach individuals who utilize platforms such as Google and Facebook more frequently than printed media.

50.     The Debtor submits that the Notice Protocol is appropriate, and that the Bar Date Notices and Plain Language Notice will provide creditors with sufficient information to file properly prepared and executed proofs of claim in a timely manner, while simultaneously protecting the confidentiality of Putative Abuse Survivors.

51.     In developing the Notice Protocol, the Debtor solicited a proposal from Captivate Minds Marketing ("Captivate Minds"), a local full-service marketing agency with expertise in both digital and traditional advertising. Captivate Minds has proposed to assist in implementing the Notice Protocol for a fee of $128,542, based on current advertising rates as of the filing of this Motion. This amount may be adjusted to reflect changes in third-party advertising rates and include Captivate Minds' hourly rate of $135 for services rendered in connection with the Notice Protocol.

52.     The Debtor respectfully requests authorization to compensate Captivate Minds Marketing for its services in disseminating the notices as described herein. The Debtor believes that this proposal is both appropriate and necessary to achieve the broad notice contemplated by the Notice Protocol, which has been thoroughly reviewed and vetted by Captivate Minds in consultation with the Debtor. Furthermore, the proposed fee is reasonable in relation to the scope and nature of the services to be provided. The assistance of Captivate Minds will enable the Debtor to implement an effective, large-scale notice campaign, ensuring that all Putative Abuse Survivors receive adequate notice.

## EFFECT OF FAILURE TO FILE A PROOF OF CLAIM FORM

53.     The Debtor proposes that, pursuant to sections 105(a) and 503(a) of the Bankruptcy Code[8] and Bankruptcy Rule 3003(c)(2),[9] any entity or person that is required to file a

---

[8] Section 503(a) of the Bankruptcy Code provides that "[a]n entity may timely file a request for payment of an administrative expense …." 11 U.S.C. § 503(a). Section 105(a) of the Bankruptcy Code provides that "[t]he court

proof of claim in this Chapter 11 Case pursuant to the Bankruptcy Code, the Bankruptcy Rules, or the Bar Date Order sought herein with respect to a particular claim against the Debtor, but that fails to do so by the applicable Bar Date, should be forever barred, estopped, and enjoined from: (a) asserting any such claim against the Debtor or its estate or property that (i) is in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such entity as undisputed, non-contingent, and liquidated or (ii) is of a different nature, classification, or priority than any such claim identified in the Schedules on behalf of such entity (any such claim under this subsection (a), an "Unscheduled Claim"); or (b) voting on, or receiving distributions under, any chapter 11 plan in this Chapter 11 Case in respect of an Unscheduled Claim. For the avoidance of doubt, nothing contained herein shall preclude a claimant from seeking relief from the Court to file a late-filed claim in accordance with Bankruptcy Rule 9006.

## NOTICE

54.    The Debtor will provide notice of this Bar Date Motion to the Core Service List as defined in the Court's *Interim Order Approving Debtor's Expedited Motion for an Order Authorizing and Approving Special Noticing and Confidentiality Procedures* [Dkt. No. 93]. A copy of this Motion and any orders approving it will also be made available on the Debtor's Case Information Website located at https://cases.stretto.com/dioceseofalexandria. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

---

may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title …." 11 U.S.C. § 105(a).

[9] Bankruptcy Rule 3003(c)(2) provides that "[a]ny creditor … whose claim … is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim … within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr. P. 3003(c)(2).

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter the Bar Date Order granting the relief requested herein and (ii) grant such other and further relief to the Debtor as the Court may deem proper.

Alexandria, Louisiana, this 29th day of December, 2025.

Respectfully submitted:

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By: */s/ Bradley L. Drell*
      Bradley L. Drell, Esq. (La. Bar #24387)
      Heather M. Mathews, Esq. (La. Bar #29967)
      2001 MacArthur Drive
      P.O. Box 6118
      Alexandria, LA 71307
      Telephone (318) 445-6471
      Facsimile  (318) 445-6476
      Email:     bdrell@goldweems.com
                 hmathews@goldweems.com

**HUSCH BLACKWELL LLP**
Mark T. Benedict, Esq. (*admitted pro hac vice*)
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone (816) 983-8000
Facsimile  (816) 983-8080
Email:     mark.benedict@huschblackwell.com

AND

Francis H. LoCoco, Esq. (*admitted pro hac vice*)
Bruce G. Arnold, Esq. (*admitted pro hac vice*)
Lindsey M. Greenawald, Esq. (*admitted pro hac vice*)
511 North Broadway, Suite 1100
Milwaukee, WI 53202
Telephone (414) 273-2100
Facsimile  (414) 223-5000
Email:     frank.lococo@huschblackwell.com
             bruce.arnold@huschblackwell.com
             lindsey.greenawald@huschblackwell.com

**ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION, DIOCESE OF ALEXANDRIA**