UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

IN RE:

| | |
|---|---|
| **DIOCESE OF ALEXANDRIA** | CASE NO. 25-31257 |
| **DEBTOR**[1] | CHAPTER 11 |

**DEBTOR'S MOTION PURSUANT TO SECTION 363(b) FOR AUTHORIZATION TO CONTINUE ENHANCED SERVICES AND EXTRAORDINARY SURVIVOR SUPPORT PROGRAMS OUTSIDE THE ORDINARY COURSE OF BUSINESS**

The **Diocese of Alexandria** (the "Diocese" or "Debtor"), as debtor and debtor in possession in the above-captioned chapter 11 case, respectfully moves this Court (the "Motion") pursuant to section 363(b) of Title 11 of the United States Code (the "Bankruptcy Code") for entry of an order substantially in the form attached as Exhibit A (the "Order"), authorizing the continuation of certain services that are part of the Diocese's specialized pastoral care program implemented in response to the clergy abuse crisis to support survivors. In support of this Motion, the Debtor relies on the *Declaration of Deacon Richard Mitchell Regarding the Debtor's History, Charitable Mission, and Purpose in Seeking Chapter 11 Relief* (the "Mitchell Declaration") and the *Declaration of David Brook in Support of First Day Motions* (the "Brook Declaration," together with the Mitchell Declaration, the "First Day Declarations"), which are incorporated by reference, and shows as follows:

**PRELIMINARY STATEMENT**

1. This Motion seeks authorization pursuant to section 363(b) of the Bankruptcy Code to use property of the estate outside the ordinary course of business to continue certain services

---

[1] The Debtor's address is 4400 Coliseum Blvd, Alexandria, LA 71303. The last four digits of the Debtor's taxpayer identification number are 1102.

1

that are part of the enhanced services and programs that the Diocese implemented as part of its comprehensive response (cumulatively, the "Enhanced Services") to the tragedy of clergy sexual abuse. Specifically, the Diocese requests approval to allocate and pay up to $40,000 of estate property to fund therapy services to survivors as part of the Enhanced Services. All disbursements for therapy services will be made in accordance with existing policies and subject to the Diocese's reasonable business judgment.

2. The Enhanced Services—including specialized pastoral care for survivors, therapy services, the Safe Environment program with professional clergy vetting protocols, VIRTUS training initiatives, and the independent Victim Assistance Coordinator office—represent a fundamental transformation in how the Diocese addresses survivor needs, prevents future abuse, and demonstrates accountability, with a particular emphasis on proactive prevention. The proactive, preventative approaches of the Enhanced Services have proven effective in identifying risks before they materialize, representing a fundamental shift from reactive to preventative institutional culture.

3. Discontinuation or disruption of Enhanced Services during the pendency of this Chapter 11 case would undermine the Diocese's reorganization efforts, compromise years of trust-building efforts, and most critically, would dismantle proactive systems utilized to meet the needs of abuse survivors. The continuation of these programs serves sound business purposes and reflects the Diocese's reasonable business judgment.

4. Certain aspects of the specialized pastoral care program, specifically the therapy services, require significant resources, specialized personnel, and ongoing financial commitment outside of and beyond the Diocese's ordinary course of business operations, ensuring that survivors receive direct care or have immediate access to licensed specialists—all at no cost to them.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicate for the relief requested herein is section 363(b) of the Bankruptcy Code.

## BACKGROUND

7. On **October 31, 2025** (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

8. On November 21, 2025, the U.S. Trustee appointed a Committee.

9. With the filing of the petition, Debtor filed the First Day Declarations. Please refer to the First Day Declarations for a summary of the Debtor in the above-referenced Chapter 11 case, including an overview of the Debtor's history, mission, ministries, financial position, the circumstances giving rise to the commencement of the Chapter 11 case, and an overview of the relief requested in the first day pleadings.

## THE ENHANCED SERVICES

A. **Specialized Pastoral Care and Counseling Program.**

10. In response to the clergy abuse crisis, the Diocese implemented comprehensive Enhanced Services that fundamentally transformed its approach to survivor support and abuse prevention.

11. This includes specialized pastoral care program specifically designed for abuse survivors, including trauma-informed counseling services at no cost, specialized training for pastoral care providers in trauma response, referral networks with secular mental health

3

professionals, and funding for therapeutic support regardless of when abuse occurred (collectively, the "Therapy Services").

12. These services fall outside the Diocese's ordinary business operations because actual utilization has been minimal in recent years, with survivors apparently preferring to seek support through other channels. Despite limited utilization, the program must remain available because survivors often come forward years or decades after incidents occur, requiring immediate access to professional support. The unpredictable timing of disclosure requires that infrastructure already exist.

**B.     Safe Environment Program.**

13. The Diocese has implemented a comprehensive Safe Environment program with a strong emphasis on proactive prevention rather than reactive response. This program includes:

   a. **mandatory background checks** for clergy, employees, and volunteers;

   b. **comprehensive psychological evaluation and vetting** of all potential priests/seminary candidates, conducted under the supervision of Dr. Lee Kneipp, a clinical psychologist;

   c. **proactive screening protocols** identifying potential risk factors before placement;

   d. **comprehensive abuse prevention curricula** reaching thousands of Catholic schools and religious education programs;

   e. **regular audits** by independent third parties; and

   f. **public reporting** of compliance metrics.

Dr. Kneipp's vetting of priests applies professional psychological assessment standards to clergy selection decisions, providing scrutiny beyond traditional seminary formation or ordinary human resources practices. This proactive approach provides critical preventative screening to protect both potential victims and the Diocese from future liability.

4

25-31257 - #206   File 12/30/25   Enter 12/30/25 13:17:30   Main Document   Pg 4 of 10

14. The Safe Environment Program is administered by Kecia Coco, who serves as part of the Diocese's regular administrative workforce with her base compensation addressed in the Debtor's separate Motion for Authorization to Pay Wages and Benefits to Personnel. However, Ms. Coco's position exists solely to administer the Enhanced Services.

**C.     VIRTUS Training Protocol.**

15. The Diocese has adopted the VIRTUS "Protecting God's Children" program, a training initiative that emphasizes prevention through awareness and early intervention. This proactive program includes mandatory initial training for all adults working with minors, education on recognizing warning signs and risk factors before incidents occur, ongoing recertification requirements to maintain vigilance, specialized modules for different roles and responsibilities, and comprehensive documentation and tracking systems. This program requires dedicated administrative infrastructure, including program coordination, documentation systems, and trainer compensation, representing significant budgetary commitment beyond normal religious education.

**D.     Independent Victim Assistance Coordinator.**

16. The Diocese engaged Dr. Lee Kneipp, Ph.D., a clinical psychologist, as an independent contractor to serve as Victim Assistance Coordinator in accordance with the *Charter for the Protection of Children and Young People* (the "Dallas Charter") adopted by the U.S. Conference of Catholic Bishops in 2002.

17. Dr. Kneipp provides comprehensive services including immediate response to abuse allegations and support to survivors, conducting psychological evaluations of candidates for diaconate and priest formation programs, providing psychological services for priests and deacons experiencing psychological or emotional distress, providing psychological services for the schools, serving as expert witness and assessor for the Diocesan Tribunal in annulment cases, proactively identifying and addressing systemic vulnerabilities in Diocese operations, and maintaining

5

25-31257 - #206   File 12/30/25  Enter 12/30/25 13:17:30  Main Document   Pg 5 of 10

confidential reporting mechanisms. Traditional diocesan operations never included such positions; they exist solely as crisis-response measures.

## RELIEF REQUESTED

5.     By this Motion, the Debtor seeks the entry of an Order, pursuant to section 363(b) of the Bankruptcy Code, authorizing the allocation and payment of up to $40,000 of estate property to fund the Therapy Services that are part of the Enhanced Services. These services include trauma response, referral networks with secular mental health professionals, and funding for therapeutic support—regardless of when the abuse occurred.

6.     The Debtor further requests that the Court find that continuation of the availability and funding for the Therapy Services serves a sound business purpose and is a proper exercise of the Debtor's business judgment, and confirming that continuation of these programs and payments thereunder are authorized and do not violate the automatic stay.

## BASIS FOR RELIEF

**A.     The Section 363(b) Standard.**

18.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." As the debtor in possession, the Diocese may exercise this authority pursuant to section 1107(a).

19.     In the Fifth Circuit, to obtain approval for a transaction outside the ordinary course of business under section 363(b), "there must be some articulated business justification" for the proposed action. *See In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) (quoting *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)). This standard is "flexible and encourages discretion." *ASARCO*, 650 F.3d at 601. A debtor's business decision should be approved unless it is so manifestly unreasonable that it could not be based upon sound business

6

25-31257 - #206  File 12/30/25  Enter 12/30/25 13:17:30  Main Document  Pg 6 of 10

judgment. *In re 9 Houston LLC*, 578 B.R. 600, 619 (Bankr. S.D. Tex. 2017) (citation omitted). In making its determination, the court must consider all salient factors, acting to further the diverse interests of the debtor, creditors, and equity holders. *ASARCO*, 650 F.3d at 601 (citing *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) and *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

20. These Enhanced Services arose from and remain defined by their extraordinary genesis: the institutional response to the clergy abuse crisis. Many of the Enhanced Services are appropriate exercises of the Debtor's business judgment and within the ordinary course of business, such as employee and volunteer screening and training.

21. However, given historical utilization, the Debtor's financial abilities, and the potential impact on utilization as a result of the filing of this Bankruptcy Case, provision of Therapy Services present an expense outside the ordinary course of operations. In addition, because the provision of Therapy Services involves expenditure by the Diocese on behalf of a pre-petition claim, it could arguably be construed a demand for payment or payment on behalf of a pre-petition claim. The Debtor is seeking approval with respect to the Therapy Services to avoid a disruption in the availability of services for requesting survivors and avoid any confusion about the applicability of the automatic stay to such requests.

22. The ordinary course analysis focuses on protecting "normal financial relations" and core business purposes. *See Rushton v. SMC Elec. Prods., Inc.* (*In re C.W. Mining Co.*), 500 B.R. 635, 641 (B.A.P. 10th Cir. 2013); *In re Craig Oil Co.*, 785 F.2d 1563, 1566-67 (11th Cir. 1986). Because the Therapy Services saw minimal utilization prior to this case, the associated funding falls outside the Diocese's ordinary operations and is distinct from its core religious, educational, and charitable mission.

23. The Diocese sees the immediate, no-cost support to abuse survivors through the Therapy Services as not only a moral imperative but also serving multiple sound business purposes and reflects reasonable business judgment. Importantly, continuation of the Enhanced Services and specifically providing the Therapy Services demonstrates good faith essential to achieving a confirmable plan and rebuilding trust with survivors and other key constituencies.

24. With the heightened visibility of this case, it is likely that additional abuse survivors will come forward seeking support. Maintaining the Enhanced Services is critical to ensure that the Therapy Services remains accessible while this case is pending.

25. Additionally, the populations served by the Diocese are, in large part, economically disadvantaged and may otherwise lack access to counseling or other services comparable to those offered under the Therapy Services at no cost to the survivor. Without this, the survivors would be deprived of critical support, increasing risk of further harm.

26. Continuation of the Enhanced Services also strengthens the Diocese's relationship and trust within the communities it serves. Offering these services enhances community safety and underscores the Diocese's commitment to healing and accountability. This relief is integral to the Diocese's ability to continue operations post-bankruptcy with public trust.

27. In sum, the allocation of $40,000 of the bankruptcy estate's funds to the Enhanced Services to allow for the continuation of the Therapy Services is necessary not only to remediate past wrongs but, more importantly, to ensure that abuse survivors have access to the Therapy Services while this case is pending. No reasonable alternative exists that would provide the same level of restorative measures at comparable or lower cost.

## **NOTICE**

28.     The Debtor will provide notice of this Motion to the Core Service List as defined in the Court's *Interim Order Approving Debtor's Expedited Motion for an Order Authorizing and Approving Special Noticing and Confidentiality Procedures* [Dkt. No. 93]. A copy of this Motion and any orders approving it will also be made available on the Debtor's Case Information Website located at https://cases.stretto.com/dioceseofalexandria. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the Order substantially in the form attached hereto as Exhibit A, respectively, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Alexandria, Louisiana, this 30th day of December, 2025.

Respectfully submitted:

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By: */s/ Bradley L. Drell*
    Bradley L. Drell, Esq. (La. Bar #24387)
    Heather M. Mathews, Esq. (La. Bar #29967)
    2001 MacArthur Drive
    P.O. Box 6118
    Alexandria, LA 71307
    Telephone (318) 445-6471
    Facsimile  (318) 445-6476
    Email:    bdrell@goldweems.com
            hmathews@goldweems.com

**HUSCH BLACKWELL LLP**
Mark T. Benedict, Esq. (*admitted pro hac vice*)
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone (816) 983-8000
Facsimile  (816) 983-8080
Email:    mark.benedict@huschblackwell.com

AND

Francis H. LoCoco, Esq. (*admitted pro hac vice*)
Bruce G. Arnold, Esq. (*admitted pro hac vice*)
Lindsey M. Greenawald, Esq. (*admitted pro hac vice*)
511 North Broadway, Suite 1100
Milwaukee, WI 53202
Telephone (414) 273-2100
Facsimile  (414) 223-5000
Email:     frank.lococo@huschblackwell.com
           bruce.arnold@huschblackwell.com
           lindsey.greenawald@huschblackwell.com

**ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION, DIOCESE OF ALEXANDRIA**