UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| In re: | Chapter 11 |
|---|---|
| DIOCESE OF ALEXANDRIA, | 3:25-bk-31257 |
|     Debtor. | |

## U.S. TRUSTEE'S POST-TRIAL BRIEF CONCERNING
## PROPOSED COUNSEL'S CITED CASE LAW

COMES NOW David W. Asbach, Acting United States Trustee for Region 5 (the "U.S. Trustee"), and files this post-trial brief in support of his objection to the application (the "Application") for the Official Committee of Unsecured Creditors (the "Official Committee") to employ Wiener, Weiss & Madison (the "Proposed Counsel"), filed at ECF No. 202. This brief is to address the Motors opinion physically brought to the hearing by Proposed Counsel. In re Motors Liquidation Co., 438 B.R. 365 (Bankr. S.D.N.Y. 2010).

### SUMMARY

Motors does not speak to the U.S. Trustee's instant argument, is nonbinding, and is factually inapposite. The key fact distinction is that Motors dealt with a law firm working, at all times, on behalf of official committees governed by § 1103 / § 330—i.e., the official committee for all unsecured creditors and then a subsequently formed official committee for asbestos claimants. Whereas the instant dispute deals with work for an *un*official as hoc committee, governed by § 503(b)(3)(D) / (b)(4), for which Proposed Counsel now improperly seek employment (and, later, compensation) as *official* committee counsel under § 1103. Motors did

not need to apply or analyze § 503(b)(3)(D) / (b)(4) because unofficial committee work did not occur in that case, unlike in this case.[1]

The bottom line is that by allowing Proposed Counsel to be employed "as of" the Petition Date, under § 1103, the Court would allow Proposed Counsel to eventually be paid for *un*official committee work under § 330—in complete disregard of § 503(b)(3)(D) and (b)(4), the express provisions established by Congress to govern unofficial committee professional compensation with a standard different from § 330. No court may issue an order that ignores expressly applicable provisions of the Bankruptcy Code, yet Proposed Counsel now wrongfully asks this Court to do so. Proposed Counsel have provided no law allowing them to be employed under § 1103 for work performed for any *un*official committee because no such law exists—not in the Code, not in the case law.

**FACTS**

The Official Committee did not exist until November 21, 2025, when the U.S. Trustee filed his notice of appointment. (Doc. 94). Mr. Naus testified the Official Committee first engaged Proposed Counsel on **December 1, 2025**. Thus, there is no fact dispute as to when Proposed Counsel's work for the Official Committee first began.

Mr. Naus also testified, however, that Proposed Counsel performed work between October 31 to November 30 (the "November Legal Services") for a group of fifteen personal injury attorneys (the "Unofficial Ad Hoc Committee"), who were tort counsel for only a subset of all abuse claimants. Mr. Naus testified that the November Legal Services amounted to more than

---

[1] Motors chose not to address the applicability of § 503(b)(3)(D) / (b)(4) to its facts, which are distinct from those at issue here, because the parties asked for a ruling without consideration of these statutory provisions. Motors, 438 B.R. at 368 n.4.

$25,000 in fees, although the specific amount is not relevant here. The critical fact is that the November Legal Services were *not* performed for the Official Committee, either after or before the Official Committee's formation but were, instead, performed solely for the Unofficial Ad Hoc Committee. This is the critical fact distinction with Motors.

The Official Committee and the Unofficial Ad Hoc Committee are not, and were never, the same entity or a portion of the same entity, chiefly, because the Unofficial Ad Hoc Committee predated the Official Committee's formation under § 1102 but also because the Unofficial Ad Hoc Committee are not creditors. As Mr. Naus's testimony shows, Proposed Counsel executed an agreement with personal injury counsel, not claimants, for the November Legal Services.

Further, the Official Committee represents the interests of all general unsecured creditors in aggregate, including both creditors who are *not* abuse claimants and abuse claimants who were not represented by Unofficial Ad Hoc Committee of personal injury attorneys. Again, the Unofficial Ad Hoc Committee members are not creditors; they are attorneys for creditors.

As shown in his testimony, Mr. Naus asked the U.S. Trustee to simply pattern the Official Committee after the Ad Hoc Committee by appointing non-creditor personal injury attorneys to the Official Committee. The U.S. Trustee declined to appoint non-creditors because, among other reasons, § 1102 explicitly requires an official committee to be composed "of creditors." Thus, the November Legal Services were provided to an unofficial ad hoc committee of non-creditor personal injury attorneys that were not, are not, and will never be an official committee or a component of one—unlike in Motors where all work was performed for members of official committees appointed by the U.S. Trustee.

## ANALYSIS

Motors Liquidation dealt with highly unusual circumstances. A law firm ("C & D") began work for a "subcommittee" component of a general *official* committee, after the general official committee had been formed, but before a separate official committee of asbestos claimants only, was later formed by the U.S. Trustee. Ultimately, C & D was retained by the official asbestos committee, which was formed from that "subcommittee" component of the general official committee. C & D sought nunc pro tunc employment back to the time it began working. However, the critical fact is that all work done by C & D, at all times, was work done for an official committee, which is not the case here.

Motors held: the law firm's "retention shall be *nunc pro tunc* to the time in October 2009 that it was **first asked to provide services to** the then-contemplated subcommittee," and that was later appointed by the U.S. Trustee as a separate official committee consisting of only asbestos claimants (the "Asbestos Claims Committee"). In re Motors Liquidation Co., 438 B.R. 365, 368 (Bankr. S.D.N.Y. 2010) (emphasis added). Unlike here, the law firm in Motors at no time performed work for a wholly unofficial ad hoc committee plainly governed by § 503(b)(3)(D) / (b)(4). Instead, the law firm at all times worked for an official committee appointed pursuant § 1102. That is, C & D either worked for the component of the general unsecured official creditors committee or worked for the subsequently appointed Asbestos Claims Committee.

Turning to the specifics of Motors, Mark Butitta was a creditor asserting an asbestos claim, and his personal injury counsel was John D. Cooney, Esq. Id. 369. "Early in the case, Mr. Butitta was appointed to the Creditors' Committee," on **June 3, 2009**.[2] Id. "He was the only holder of an asbestos-related claim who was so appointed." Id. "Mr. Butitta served on the Creditors'

---

[2] See ECF No. 356, case no. 09-50026, Bankr. SDNY.

Committee until March 2010, at which time he resigned from the Creditors' Committee and instead joined the Asbestos Claims Committee when the UST formed the latter and appointed him to it." Id.

In October 2009, "counsel for the Debtors and the Creditors' Committee proposed to Mr. Cooney that he (as counsel to Mr. Butitta) serve as a subcommittee of the Creditors' Committee for the purpose of representing the interests of creditors holding asbestos-related personal injury or wrongful death claims, and that the approval of the UST and the bankruptcy court be sought for the formation of such subcommittee and for its retention of separate counsel." Id. "Mr. Cooney asked C & D to serve as counsel for the subcommittee, with the understanding that the subcommittee would seek approval to retain the firm *nunc pro tunc*" once its status was formalized. Id. "C & D began to work in that capacity immediately . . . because time was of the essence[.]" Id. The start date for C & D's work was **October 6, 2009**.

At some point between October 2009 and March 2010, the UST discovered this asbestos so-called "subcommittee" and "became uncomfortable with the idea of there being a subcommittee of an official committee." Id. at 370. "[T]he Creditors' Committee and the Debtors agreed with the UST that holders of asbestos claims would be represented by a separate official committee (once more, in contrast to a subcommittee of the Creditors' Committee), and thus that an official Asbestos Claims Committee should be formed." Id.[3]

"On **March 5, 2010**, approximately five months after the Subcommittee's creation, the UST created the Asbestos Claims Committee and appointed its three members, Mr. Butitta, Ms. Sally Maziarz and Mr. Charles Cantrell." Id. (emphasis added). "On March 5, 2010 (after the UST issued notice of the appointment of the Asbestos Claims Committee on that same day), the

---

[3] Note the court's emphasis on the subcommittee being a component of the general unsecured official committee.

Asbestos Claims Committee informed C & D that it had been selected to serve as the Asbestos Claims Committee's counsel, and on March 18, 2010, the Asbestos Claims Committee filed its application to retain C & D." Id.

In the end, the Motors court simply held that the C & D law firm could be employed from when it began work for the official committee, on October 6, irrespective of when the U.S. Trustee formally appointed the Asbestos Claims Committee, on March 5. In other words, the C & D law firm began working for a component of the general official committee and then continued such work once that component (or so-called "subcommittee") became a separate official committee for asbestos claimants. Regardless of Motors' ultimate wisdom or legal correctness, that is *not* what we have in the present case.

Here, Proposed Counsel seeks retroactive employment for work performed for the Unofficial Ad Hoc Committee of personal injury attorneys, originally formed pre-petition, which is not and has never been an official committee nor any component of one.

Proposed Counsel's request for retroactive employment under § 1103, as of the Petition Date, effectively asks this Court to designate the distinct Unofficial Ad Hoc Committee as an official committee, usurping the U.S. Trustee's statutory authority to appoint committees. To approve Proposed Counsel's employment, under § 1103, for work that was provided to a group of personal injury attorneys, who were never appointed by the U.S. Trustee and are not actual creditors themselves, would ignore the absolute precondition of § 1102 committee appointment for § 1103 employment and compensation of committee professionals. Additionally, it violates and nullifies Congress's express requirement that official committees consist of "of creditors or of equity security holders," rather than attorneys for creditors. 11 U.S.C. § 1102(a)(1).

Additionally, allowing retroactive employment to the Petition Date, under § 1103, for an unofficial committee also violates and nullifies § 503(b)(3)(D) / (b)(4), which the Court has no authority to do. In those sections, Congress expressly created a procedure and standard for seeking compensation for work provided on behalf of an unofficial ad hoc committee.[4] Anyone seeking such compensation must, by separate application, demonstrate the services provided amounted to a "substantial contribution" to the case, a different and higher standard than the § 1103 / § 330 "reasonable compensation" standard applicable to official committee professional compensation.

As Mr. Naus testified, the November Legal Services encompassed work solely for the Unofficial Ad Hoc Committee. If Proposed Counsel is employed under § 1103 retroactive to the Petition Date, they will ipso facto be allowed to seek compensation for the November Legal Services under § 330. This would nullify Congress' clear intent that § 503(b)(3)(D) / (b)(4) govern such compensation for unofficial committee work.

Finally, employment retroactive to December 1 *is* still nunc pro tunc relief because the Application was not filed until December 23. But such retroactive employment complies with Local Rule 2014-1(b)(1) since the Application was filed within thirty days of beginning work on December 1. As applied to the earlier date of October 31, however, the Application would fail to comply with Local Rule 2014-1(b)(2), which applies when the application is filed more than thirty days after beginning work, in that the Application fails to include: i) an explanation of why the motion was not filed earlier; ii) an explanation why the order authorizing retroactive employment

---

[4] Section 503(b)(3)(D) applies to compensation sought for "a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this tittle." Notably, the text of § 503(b)(3)(D) would encompass an unofficial committee, like the one here, composed of creditor attorneys, as a body "representing creditors." Section 503(b)(4) allows for professional compensation for such an unofficial committee of creditor attorneys. By contrast, § 1102 requires an official committee to be composed "of creditors," which is another reason the Ad Hoc Committee cannot be treated as an official committee, as Proposed Counsel demand.

is required; and iii) an explanation, to the best of the applicant's knowledge, as to how approval of the motion may prejudice any parties-in-interest.

In particular, given Proposed Counsel's ability to seek compensation under § 503(b)(3)(D) / (b)(4) for the work done for the Unofficial Ad Hoc Committee, it is entirely unclear why retroactive employment for an Official Committee, before the Official Committee even existed, is necessary assuming it were possible—which it is not. There is no fact dispute that the work for the Official Committee began on December 1 and no earlier.

WHEREFORE, the U.S. Trustee asks the Court to approve employment of Proposed Counsel as of December 1, 2025, and no earlier.

Date:   January 27, 2026.

        DAVID W. ASBACH

        Acting United States Trustee, Region 5.

        /s/ *Antony D. Constantini*
        Antony D. Constantini, Fla. Bar No. 92722
        Trial Attorney, Office of the U.S. Trustee
        300 Fannin Street, Suite 3196, Shreveport, Louisiana 71101
        antony.constantini@usdoj.gov | (202) 567-1128

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served through the Court's electronic filing system on all parties electing to receive electronic service in this case.

Date:   January 27, 2026.

        /s/ *Antony D. Constantini*
        Antony D. Constantini, Fla. Bar No. 92722
        Trial Attorney, Office of the U.S. Trustee
        300 Fannin Street, Suite 3196, Shreveport, Louisiana 71101
        antony.constantini@usdoj.gov | (202) 567-1128