UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

IN RE:                                                                CASE NO. 25-31257

  **DIOCESE OF ALEXANDRIA**

     **DEBTOR**[1]                                                       CHAPTER 11

_____

**DEBTOR'S *EXPEDITED* MOTION FOR A PROTECTIVE ORDER**

> THE DEBTOR HAS REQUESTED AN EXPEDITED SPECIAL SETTING FOR THE HEARING OF THIS MATTER ON FEBRUARY 17, 2026, AT 10:00 A.M. (PREVAILING CENTRAL TIME) (A) IN PERSON AT TOM STAGG UNITED STATES COURTHOUSE, COURTROOM 4, 300 FANNIN STREET, SHREVEPORT, LOUISIANA 71101, OR (B) VIRTUALLY USING ZOOM ID <u>160 6557 9520</u> AND PASSCODE <u>6480377</u>. FOR A DIRECT LINK AND OTHER INSTRUCTIONS REGARDING VIRTUAL ATTENDANCE, SEE THE "NOTICE REGARDING REMOTE ACCESS TO PROCEEDINGS" ISSUED BY JUDGE HODGE AND AVAILABLE ON THE COURT'S WEBSITE AT https://www.lawb.uscourts.gov/.
>
> IF YOU OBJECT TO THE RELIEF REQUESTED OR BELIEVE THAT EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU MUST MAKE YOUR OBJECTION AT THE HEARING, OR FILE A WRITTEN OBJECTION BEFORE THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

The **Diocese of Alexandria** (the "Debtor" or "Diocese"), as debtor-in-possession, through the undersigned counsel files this motion (the "Motion") pursuant to section 107 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 2002, 7026, 9014, 9018, and 9037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules of Bankruptcy Procedure 9037-1, 9071-1, and 9072-1 in the United States Bankruptcy Court for the Western District of Louisiana ("LBR"). The Debtor seeks entry of a

---

[1] The Debtor's address is 4400 Coliseum Blvd, Alexandria, LA 71303. The last four digits of the Debtor's taxpayer identification number are 1102.

1

final order substantially in the form attached hereto as <u>Exhibit A</u> (the "Final Order"). In support of this Motion, the Debtor relies on the *Declaration of Deacon Richard Mitchell Regarding the Debtor's History, Charitable Mission, and Purpose in Seeking Chapter 11 Relief* (the "Mitchell Declaration") and the *Declaration of David Brook in Support of First Day Motions* (the "Brook Declaration," together with the Mitchell Declaration, the "First Day Declarations"), which are incorporated by reference, and shows as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are section 107 of the Bankruptcy Code, Bankruptcy Rules 2002, 7026, 9014, 9018, and 9037, and LBR 9037-1, 9071-1, and 9072-1.

## BACKGROUND

4. On **October 31, 2025** (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and an Official Committee of Unsecured Creditors was appointed on December 2, 2025.

5. With the filing of the petition, Debtor filed the First Day Declarations. Please refer to the First Day Declarations for a summary of the Debtor in the above-referenced Chapter 11 Case, including an overview of the Debtor's history, mission, ministries, financial position,

the circumstances giving rise to the commencement of the Chapter 11 Case, and an overview of the relief requested in the first day pleadings.

6. Due to the nature of this bankruptcy proceeding, the Diocese anticipates discovery in this case will necessarily involve the production of confidential information, such as financial information, information and records involving employment and personnel files, and information regarding sexual abuse claims. Specifically, the Diocese anticipates requests for information and documents regarding the Diocese's finances, clergy assignments, personnel files and other employment history, and information and documents regarding sexual abuse claims involving the Diocese and/or clergy for an extended period of time. Much of this information will include confidential information of the Diocese and others (including alleged victims and claimants) necessitating that a protective order be in place to protect such confidential information.

7. Previously, the Court entered its Final Order Approving Debtor's Expedited Motion for an Order Authorizing and Approving Special Noticing and Confidentiality Procedures [Dkt. No. 216] involving the exchange of information within the claim submission process. This Motion involves documents and information exchanged in discovery.

## RELIEF REQUESTED

8. The Diocese seeks a protective order to protect the disclosure and use outside of this case the information or items that are entitled to protection under the applicable legal principles to treatment as confidential, including without limitation financial information, information and records involving employment and personnel files, and information regarding sexual abuse claims.

9. The Diocese does not seek blanket protection on all documents and materials produced in discovery.

## BASIS FOR RELIEF

**A. Good cause exists for the entry of a protective order to protect (a) private, personal, confidential information, including information regarding sexual abuse claims and (b) financial information of the Diocese.**

10. Federal Rule of Civil Procedure 26(c) (made applicable to contested proceedings in this Chapter 11 Case under Bankruptcy Rules 9014 and 7026) provides authority for the Court to issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." "Even where the scope of discovery is broader in a bankruptcy proceeding than in an ordinary civil proceeding, Rule 26(c) still applies to limit the promulgation of damaging information. *See In re Symington*, 209 B.R. 678, 688-89 (Bankr. D. Md. 1994) ("Examinations under Federal Rule of Bankruptcy Procedure 2004 may be subject to limitation by Federal Rules of Civil Procedure 26(c) and 45(c).").

11. Section 107(a) of the Bankruptcy Code aligns with the public's common law right to access court records. *See* 11 U.S.C. § 107(a); *Nixon v. Warner Communications*, 435 U.S. 589, 597-98 (1978) (recognizing a general right to inspect and copy public records, including judicial documents). However, sections 107(b) and (c) create express exceptions, such as the requirement that bankruptcy courts protect parties from the disclosure of "scandalous or defamatory matter[s]," without the need to balance public and private interests. *See Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland Oregon in Oregon)*, 661 F.3d 417, 429 (9th Cir. 2011).

12. Specifically, § 107(b) and (c) provide, in pertinent part:

(b) On request of a party in interest, the bankruptcy court **shall**, and on the bankruptcy court's own motion, the bankruptcy court may – ...

(1) protect an entity with respect to a trade secret or **confidential research, development, or commercial information**; or

4

> > (2) protect a person with respect to **scandalous or defamatory matter** contained in a paper filed in a case under this title.
>
> (c)(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of . . . unlawful injury to the individual or the individual's property:
>
> > (A) **any means of identification** (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.

11 U.S.C. § 107 (emphasis added).

13. Rule 9018 defines the procedures by which a party may move for relief under § 107(b), which authorizes the Court to "make any order which justice requires to (1) protect the estate or any entity regarding . . . confidential research, development, or commercial information; [or] (2) protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code . . . ." Fed. R. Bankr. P. 9018(a)(1)-(2). The Court may also "order that a filing be made under seal without redaction." Fed. R. Bankr. P. 9037(c); *see also* LBR 9037-1(a). LBR 9071-1(a) further permits a party to "file under seal any document that a statute or rule requires or permits to be so filed," such as under § 107(b).

14. In similar bankruptcies involving other dioceses, it is customary that routine protective orders such as the one proposed by the Diocese here are entered. *See, e.g.*, Protective Order, *In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La. Aug. 3, 2020), attached as Exhibit B; Order Approving Stipulation Regarding Confidentiality Agreement Between Debtor and Official Committee of Unsecured Creditors, and Their Respective Professionals, *In re Archdiocese of Milwaukee, No. 11-20059* (Bankr. E.D. Wisc. May 12, 2011), attached as Exhibit C; Stipulated Confidentiality Order Governing Production and Access to Confidential Material, *In re Roman Catholic Church of the Diocese of Gallup*, Case No. 13-13677 (Bankr. D.N.M. June 4, 2014), attached as Exhibit D.

15. The United States Supreme Court, Louisiana courts, and other courts across the country have consistently held that information provided in civil discovery is not "public" and a protective order restricting dissemination is the appropriate method to preserve confidentiality and protect against public disclosure. *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *United States v. Carriles*, 654 F. Supp. 2d 557, 572-73 (W.D. Tex. 2009) (citing *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1996)) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation."); *In re Gannett News Serv., Inc.*, 772 F.2d 113, 116 (5th Cir. 1985) (holding that "[t]he results of pretrial discovery may be restricted from the public" and "temporary denial of access [to evidence not yet ruled admissible] constitutes no form of prior restraint"); *Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1987) (discovery in civil litigation "is generally private" and is not "public disclosure" but "private disclosure for a limited use.").

16. Further, courts have found that "good cause" may be shown where it is readily apparent from the nature of the information sought that such information contains confidential, sensitive, private information that should not be disclosed to the public. For example, in *EEOC v. Signal Int'l, L.L.C.*, No. 12-557, 2013 U.S. Dist. LEXIS 128990, at *2 (E.D. La. Sep. 10, 2013), the Eastern District of Louisiana found that a protective order prohibiting parties from publicly disseminating information obtained through pre-trial discovery was warranted given "the highly sensitive nature of the lawsuit" and the "potential for abuse through the media." Id. The court

6

25-31257 - #254  File 02/02/26  Enter 02/02/26 17:45:07  Main Document  Pg 6 of 11

"[could] not fathom why the dissemination of any information obtained through the discovery process outweighs the privacy interest of the parties and non-parties at this time." *Id.*; *see Pamlab, L.L.C. v. Brookstone Pharm., L.L.C.*, No. 09-7434, 2010 U.S. Dist. LEXIS 120303, at *12-14 (E.D. La. Oct. 22, 2010) (finding good cause for a protective order where each party alleged that the other had "waged a negative media campaign against it" and given "the potential for widespread dissemination of discovered information to the public"); *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 73 (S.D.N.Y. 2010) (finding that information requested through discovery was confidential and therefore found that there was good cause for a protective order without looking at specific examples of documents).

17. Courts have consistently found that personnel files, such as the Diocese's clergy personnel files, are confidential and should be produced only subject to a protective order. *See May v. FedEx Freight Se., Inc.*, No. 07-660-B-M2, 2009 U.S. Dist. LEXIS 48257, at *10 (M.D. La. June 8, 2009) (finding that the entirety of the personnel file should be protected as confidential pursuant to a protective order); *Cannon v. Lodge*, No. 98-2859, 1999 U.S. Dist. LEXIS 12358, 1999 WL 600374, at *1 (E.D. La. Aug. 6, 1999) (ordering that personnel records and investigative and complaint records be produced only subject to a protective order); *D'Antoni v. Roach*, No. 97-1799, 1997 U.S. Dist. LEXIS 16085, 1997 WL 627601, at *4 (E.D. La. Oct. 10, 1997) (ordering the production of personnel and internal investigation files, subject to the restriction that all information remain confidential and be "used only for purposes of this litigation").

18. Here, like in these other cases, there is good cause to enter a protective order to protect the confidential, personal, private information of the Diocese and others, such as information found in clergy personnel files and information about sexual abuse claims,

particularly considering the highly sensitive nature of this proceeding and the potential for abuse through the media.

19. Discovery in this bankruptcy proceeding will also require the Diocese to produce confidential and proprietary financial information, which the Diocese does not make available to the public. For example, the Diocese may be asked to produce electronic accounting system data, monthly financials, other financial reporting, budgets, audit reports, and the like.

20. Courts routinely hold that these types of financial documents are precisely the kinds of documents that should only be produced subject to a protective order which—while allowing production of the documents in the litigation—protects their confidentiality and bars their dissemination beyond the confines of the litigation. *See, e.g., Old Towne Dev. Grp., L.L.C. v. Matthews*, No. 09-224-B-M2, 2009 WL 2021723, at *2 (M.D. La. July 9, 2009) (finding that account statements should be subject to a protective order since they contain confidential financial information); *Fed. Deposit Ins. Corp. v. Schoenberger*, No. 89-2756, 1990 WL 52863, at *1 (E.D. La. Apr. 24, 1990) (granting motion for a protective order to protect documents containing information relative to financial transactions of individuals, documents and information relating to the appraised value of assets of the receivership estate, and examination reports and work papers); *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 552-53 (N.D. Ind. 1991) (issuing protective order to protect confidential, proprietary information included in minutes of directors meetings); *C.A. Muer Corp. v. Big River Fish Co.*, No. 97-5402, 1998 WL 488007, at * 1, 4 (E.D. Penn. Aug. 10, 1998) (entering protective order limiting dissemination of confidential and proprietary documents, such as documents reflecting the budget of the plaintiff's restaurant operation, media budgets, advertising budgets and marketing budgets, to attorneys for litigants only).

### B. The Diocese's proposed protective order provides necessary and proper mechanisms for parties to protect confidential information produced in discovery.

21. The Diocese seeks entry of an appropriately tailored protective order to protect confidential documents and information produced in discovery in this proceeding. The proposed protective order establishes a framework for determining whether a particular document is entitled to protection by defining "Confidential Information" for purposes of the order. The Diocese's proposed protective order also provides a typical process whereby parties can produce documents to each other marked "Confidential" or "Confidential for Certain Attorneys' Eyes Only." Under the proposed protective order, if a receiving party challenges a confidentiality designation, the parties must meet and confer in good faith to resolve the challenge informally without judicial intervention. The party challenging the confidentiality designation can only file a motion, objection, or other appropriate paper or pleading <u>after</u> making a good faith effort to resolve the challenge before raising the matter with the Court. Exhibit A, Proposed Protective Order at ¶ 14. The Diocese's proposed protective order simply seeks to protect confidential information produced in discovery and prohibit disclosure and use of such information except for purposes of this Chapter 11 Case.

22. Accordingly, the Diocese respectfully requests that the Court enter the Diocese's proposed protective order because it provides reasonable and practical mechanisms that will facilitate discovery while properly protecting confidential financial and other private information and providing the parties opportunity and procedures to challenge any confidentiality designations.

### **RESERVATION OF RIGHTS**

23. Nothing contained in this Motion is intended to be or shall be construed as a waiver of any of the Debtor's rights under any applicable law, including, without limitation, the

Code of Canon law, the First Amendment of the United States Constitution, the Constitution of the State of Louisiana, Louisiana Business Corporation Act, the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb-2000bb-4), the church autonomy doctrine, charitable trust law, Louisiana trust law, and the Debtor's rights under any insurance policies and to proceeds thereof, and to object to disclosure of information and contend that certain assets discussed in this Motion are not property of the estate.

## NOTICE

24. The Debtor will provide notice of this Motion to the Core Service List as defined in the Court's *Final Order Approving Debtor's Expedited Motion for an Order Authorizing and Approving Special Noticing and Confidentiality Procedures* [Dkt. No. 216]. A copy of this Motion and any orders approving it will also be made available on the Debtor's Case Information Website located at https://cases.stretto.com/dioceseofalexandria. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests entry of an order granting the relief requested in this Motion and such other and further relief as the Court may deem just and appropriate.

Alexandria, Louisiana, this 2nd day of February, 2026.

Respectfully submitted:

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By: */s/ Bradley L. Drell*
    Bradley L. Drell, Esq. (La. Bar #24387)
    Heather M. Mathews, Esq. (La. Bar #29967)
    2001 MacArthur Drive
    P.O. Box 6118
    Alexandria, LA 71307
    Telephone (318) 445-6471
    Facsimile (318) 445-6476
    Email: bdrell@goldweems.com
           hmathews@goldweems.com

**HUSCH BLACKWELL LLP**
Mark T. Benedict, Esq. (*admitted pro hac vice*)
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone (816) 983-8000
Facsimile (816) 983-8080
Email: mark.benedict@huschblackwell.com

AND

Francis H. LoCoco, Esq. (*admitted pro hac vice*)
Bruce G. Arnold, Esq. (*admitted pro hac vice*)
Lindsey M. Greenawald, Esq. (*admitted pro hac vice*)
511 North Broadway, Suite 1100
Milwaukee, WI 53202
Telephone (414) 273-2100
Facsimile (414) 223-5000
Email: frank.lococo@huschblackwell.com
       bruce.arnold@huschblackwell.com
       lindsey.greenawald@huschblackwell.com

**ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION, DIOCESE OF ALEXANDRIA**